IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WW, LLC et al.                *
                             *
v.                           *      Civil No. WMN-05-3360
                             *
THE COFFEE BEANERY, LTD.      *
et al.                       *
                             *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

The attempted resolution of the dispute underlying this action has a long and somewhat complex history.  The dispute has been the subject of an eleven-day arbitration in Michigan and has generated judicial opinions from this Court, the United States District Court for the Eastern District of Michigan, the Sixth Circuit Court of Appeals and, most recently, the Fourth Circuit Court of Appeals.  The case is presently before this Court on remand from the Fourth Circuit and, while there are six pending motions, there are just two primary issues presented: (1) whether this Court or the Eastern District of Michigan is the proper venue for this dispute to be ultimately resolved; and (2) whether Plaintiffs can amend the Complaint at this time to add a new cause of action.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] This factual and procedural background follows, for the most part, the background laid out by the Fourth Circuit in its

WW, LLC, a Maryland limited liability company, Richard Welshans, and Deborah Williams commenced this action in this Court almost six years ago, on December 15, 2005.  Plaintiffs named as defendants The Coffee Beanery, Ltd., a Michigan corporation, and several individual officers of The Coffee Beanery.  The Coffee Beanery franchises specialty retail coffee stores, cafes, kiosks, coffee carts, and coffee bars, and it is registered in Maryland, allowing it to offer and sell franchises in Maryland.

In May 2003, Welshans and Williams, a married couple, investigated the possibility of purchasing a franchise to operate a Coffee Beanery store in Annapolis, Maryland.  In response to their request, The Coffee Beanery sent them a copy of the Uniform Franchise Offering Circular for the State of Maryland, together with a form franchise agreement, which Welshans and Williams received in early June 2003.  About a week later, Kevin Shaw, the vice-president of The Coffee Beanery, visited Welshans and Williams in Annapolis to discuss more particularly the possibility of entering into a franchise agreement.  Several days later, Welshans and Williams attended a Coffee Beanery "discovery day" in Flushing, Michigan, during

---

recent opinion, WW, LLC v. Coffee Beanery, LTD, 419 F. App'x 372 (4th Cir. 2011).

which they were given a tour of a Coffee Beanery Cafe store and engaged in further discussions about entering into a franchise.

At the conclusion of "discovery day," Welshans signed a franchise agreement with The Coffee Beanery for the operation of a franchised Coffee Beanery Cafe store in Annapolis. Subsequently, with The Coffee Beanery's consent, Welshans assigned the franchise agreement to WW, LLC, which is wholly owned by Welshans and Williams. WW, LLC opened its Coffee Beanery Cafe store in 2004.

The store was unsuccessful and generated a cash loss each year of its operation and went completely out of business in 2007. WW, LLC attributed the losses and demise of the store to the store layout, the cash register system, the advertising program, and the nature of required equipment. More importantly, they claim that material facts about Coffee Beanery Cafe store franchises were misrepresented or omitted during the negotiation process.

Plaintiffs then brought this action alleging violations of the Maryland Franchise Law, detrimental reliance, intentional misrepresentation, and negligent misrepresentation. They complained, among other things, that the Uniform Franchise Offering Circular provided by The Coffee Beanery was incomplete and inaccurate, in violation of Maryland law. They also alleged that the franchise agreement contained untrue statements of

fact, and that Kevin Shaw (a Coffee Beanery officer) and The
Coffee Beanery made false statements regarding the operation and
earnings of franchised stores and other matters.  WW, LLC also
filed a complaint with the Maryland Securities Commissioner.

On February 17, 2006, Defendants filed a motion to dismiss
this action or to stay it pending arbitration.  Around the same
time, they filed a petition to compel arbitration in the Eastern
District of Michigan, relying on the franchise agreement's
arbitration clause and its forum selection clause, which
provided that any legal action be brought in the Eastern
District of Michigan.  Shortly thereafter, Plaintiffs filed a
motion to stay this action pending the outcome of the proceeding
before the Maryland Securities Commissioner.  In response to
both these motions to stay, this Court entered an order, dated
March 23, 2006, staying this action and administratively closing
the case.  ECF Nos. 14, 15.

In the agency action, the Maryland Securities Commissioner
entered an order directing The Coffee Beanery and its officers
to show cause "why a final order should not be entered ordering
that Respondents cease and desist from violating the disclosure
and antifraud provisions of the Maryland Franchise Law."
Following an agency investigation, the Commissioner and The
Coffee Beanery entered into a consent order, in which The Coffee
Beanery neither admitted nor denied the Commissioner's statement

4

of facts and conclusions of law but agreed to the agency's jurisdiction and its order.  The Commissioner found that The Coffee Beanery violated the Maryland Franchise Law by making material misrepresentations of fact or omissions of material fact about The Coffee Beanery franchise and by offering and selling franchises in Maryland without giving prospective franchisees a copy of the required offering prospectus, in accordance with Maryland law.

The consent order directed that The Coffee Beanery and its officers "permanently cease and desist from offering and selling franchises in Maryland or to any prospective Maryland franchisees in violation of the Maryland Franchise Law."  In addition, the consent order required The Coffee Beanery "to make a rescission offer to the Welshans, by and through WW, LLC" allowing them to rescind the franchise agreement on the condition that they release all claims against The Coffee Beanery and its agents.  WW, LLC, Welshans, and Williams did not accept the rescission offer provided for in the consent order, electing to pursue their claims against The Coffee Beanery, as asserted in this action.

After the Coffee Beanery filed the petition to compel arbitration in the Eastern District of Michigan, that court granted the petition, an arbitration was held, and the arbitrator subsequently found in favor of The Coffee Beanery.

The arbitrator found "no intent on the part of Respondents to mislead Claimants or misrepresent the franchise system." She determined that The Coffee Beanery properly provided Welshans with a copy of the Uniform Franchise Offering Circular, and that Plaintiffs did not "rely on any sales or expense information provided by Respondents." With respect to a claim advanced by Plaintiffs that Kevin Shaw failed to disclose a felony grand larceny conviction, the arbitrator concluded that it was not the kind of conviction subject to disclosure because Michigan and Maryland disclosure laws are limited to "felonies that involve fraud, embezzlement, fraudulent conversion, or misappropriation of property." In addition, the arbitrator found "the testimony of witnesses Welshans, Williams, and their expert witness []　with regard to the claim for damages, not credible." Ultimately, the arbitrator concluded that The Coffee Beanery was not liable on any claim and that WW, LLC, Welshans, and Williams should pay costs and back royalties to The Coffee Beanery.

The district court for the Eastern District of Michigan confirmed this arbitration award and entered a judgment ordering WW, LLC, Welshans, and Williams to pay The Coffee Beanery $152,766.73. Based on the judgment entered in the Eastern District of Michigan, Judge Davis entered an order in this case on March 3, 2008, dismissing this action "[i]n accordance with

the judgment . . . of the United States District Court for the Eastern District of Michigan."

The judgment entered in the Eastern District of Michigan was appealed to the Sixth Circuit.  On November 14, 2008, the Sixth Circuit reversed the judgment, vacated the arbitration award, and held that the arbitration provision in the franchise agreement was unenforceable because of fraud in the inducement. Coffee Beanery, LTD v. WW, L.L.C., 300 F. App'x 415 (6th Cir. 2008).  Without reaching WW, LLC's other arguments, the Sixth Circuit held that the arbitrator's decision that Kevin Shaw's grand larceny conviction need not have been disclosed showed a "manifest disregard for the law" because a grand larceny conviction involves misappropriation of property.  The Sixth Circuit held that WW, LLC, was not bound by the arbitration clause because The Coffee Beanery's failure to disclose Kevin Shaw's conviction deprived WW, LLC, "of a mandatory, statutorily required notice" prior to signing the agreement and therefore, WW, LLC, was "fraudulently induced into signing" the franchise agreement.  Finally, the court stated that WW, LLC, "need not resort to arbitration to vindicate its statutory rights but may instead seek appropriate relief in a court of law." Id. at *6-*7.

In light of the Sixth Circuit's decision reversing the Eastern District of Michigan judgment, on which this Court

relied to close this case, WW, LLC requested that this Court

reopen the judgment based on Federal Rule of Civil Procedure

60(b)(5).  By order dated June 1, 2009, Judge Andre Davis, then

of this Court,[2] denied the motion, stating:

> [T]he mere fact that the Sixth Circuit vacated the
> district court judgment enforcing the arbitration
> award resulting from the arbitral proceedings over
> which that court had jurisdiction is no reason for
> this court to vacate its judgment here.  In dismissing
> the case, this court presumed that plaintiffs would
> pursue whatever alternative remedies they wished to
> pursue in the court having jurisdiction over the
> parties and their dispute, namely, the Eastern
> District of Michigan.

ECF No. 31 at 1-2.  Plaintiffs timely appealed that decision to

the Fourth Circuit Court of Appeals.  On March 23, 2011, the

Fourth Circuit reversed, noting that, while this Court relied on

the general language of Rule 60(b), which provides that a court

may set aside a judgment on the basis of "mistake, inadvertence,

surprise, or excusable neglect ... or ... any other reason

justifying relief from the operation of the judgment," it did

not address Rule 60(b)(5), which allows relief from a final

judgment if "it is based on an earlier judgment that has been

reversed or vacated."  419 F. App'x 372 at *4.  After opining

that, when the Sixth Circuit reversed the judgment of the

Eastern District of Michigan "the conditions for the application

---

[2] Judge Davis has since been elevated to the Fourth Circuit Court
of Appeals and this case was reassigned to the undersigned.

of Rule 60(b)(5) were met," _id._, the Fourth Circuit concluded

that it was an abuse of discretion for this Court to not reopen

the case.

The Fourth Circuit issued its mandate on April 14, 2011.

On April 21, 2011, Plaintiff filed a motion to reopen the case,

ECF No. 42, and on April 26, 2011, filed an Amended Complaint.

ECF No. 44.  In the Amended Complaint, Plaintiffs insert a new

Racketeer Influenced and Corrupt Organization (RICO) claim and

correct and amend some of the factual allegations in the

original complaint.

Defendants then moved to strike the Amended Complaint on

the ground that, under Rule 15(a)(1)(B) of the Federal Rules of

Civil Procedure, Plaintiffs were required to obtain the consent

of the Defendants or leave of the Court before filing an Amended

Complaint.  ECF No. 47.  In response to the motion to strike,

Plaintiffs filed a motion for leave to file an amended

complaint, ECF No. 51.  Defendants opposed that motion, ECF No.

56, arguing that it would be prejudicial to add a new claim this

many years after the initial complaint was filed and the

amendment would be futile in that the proposed amended complaint

fails to state a RICO claim and that any claim, if stated, would be time barred.[3]

In addition to moving to strike the amended complaint, Defendants filed a motion seeking to dismiss the case, or in the alternative, to transfer the case to the Eastern District of Michigan. ECF No. 48. Defendants argue that venue is not proper in this Court under 28 U.S.C. § 1391 in that all of the Defendants are in Michigan and the conduct that gave rise to Plaintiff's causes of action took place in Michigan. In addition, Defendants rely on the forum selection clause in the Franchise Agreement, which states that any judicial action should be filed in the United States District Court where The Coffee Beanery's principal place of business is located, which is the Eastern District of Michigan.

Plaintiffs opposed that motion, Defendants replied, and then Plaintiffs filed a "Supplemental Memorandum of Law" in opposition to the motion to dismiss or transfer. Defendants moved to strike the "Supplemental Memorandum," ECF No. 58, deeming it a surreply which is not permitted under the Local Rules absent leave of the Court. <u>See</u> L.R. 105.2(a). To conform to the Local Rules, Plaintiffs then filed a motion for leave to

---

[3] Defendants do not oppose amendment to the extent the Amended Complaint seeks to correct factual inaccuracies. ECF No. 56 at 6.

file a surreply, ECF No. 60, which motion Defendants have opposed.

All the pending motions are now ripe.

## II. DISCUSSION

### A. Procedural Issues

Defendants are correct that under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs were required to obtain Defendants' consent or leave of Court before filing an amended complaint. By filing a motion for leave to amend, Plaintiffs essentially concede that point.[4] Thus, the motion to strike the amended complaint will be granted. The motion to amend will be discussed below.

Defendants are also correct that, under the Local Rules, Plaintiffs were required to seek leave of Court before filing what is, in essence, a surreply. Again, Plaintiffs conceded as much by filing the motion for leave to file a surreply. The Court will grant the motion to strike. The Court will also deny Plaintiffs' motion for leave to file their surreply. While Plaintiffs claim that a surreply was neccessary to correct misrepresentations of the law and the record, that is not proper grounds for the filing of a surreply. Surreplies are permitted

---

[4] Given the long and tortured history of this dispute, it is understandable that Plaintiffs might fail to appreciate this obligation.

to allow response to new argument or authority presented in a reply memorandum and the Court finds no such new argument nor authority requiring a response from Plaintiffs.

**B. Motion to Dismiss or Transfer**

Defendants argue that this action must be dismissed under Rule 12(b)(3) because venue is not proper under 28 U.S.C. § 1391.  Under 28 U.S.C. § 1391(a), venue is proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."  "[I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action."  Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).  Rather, the court "should review 'the entire sequence of events underlying the claim.'"  Id. (quoting Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001)).  A plaintiff is not required to establish that his chosen venue has the most substantial contacts to the dispute.  Power Paragon, Inc. v. Precision Technology USA, Inc., 605 F. Supp. 2d 722, 726 (E.D. Va. 2008).  It is sufficient that a substantial part of the events occurred in that venue, even if a greater part of the events occurred elsewhere.  Id.

Plaintiffs allege that The Coffee Beanery sent to them in Maryland a copy of the Uniform Franchise Offering Circular along

with a form franchise agreement.  Shortly thereafter, Defendant
Kevin Shaw came to Maryland as a representative of The Coffee
Beanery to meet with Plaintiffs to discuss the possibility of
entering into a franchise agreement.  While Plaintiffs may have
traveled to Michigan to further investigate the potential of a
Coffee Beanery franchise, the franchise itself was ultimately
located in Maryland.  Furthermore, the losses experienced by
Plaintiffs allegedly caused by the system designed by, equipment
and materials furnished by, and misrepresentations made by
Defendants were all suffered in Maryland.  The Court finds these
events to be sufficiently substantial to support venue in this
district.

The Court also notes that The Coffee Beanery has expressly
consented to suit in Maryland, as it was required to do under
Maryland's Franchise Registration and Disclosure Law.  See Md.
Code Ann., Bus. Reg. § 14-216(c)(25) (requiring any franchise
prospectus to include "an irrevocable consent to be sued in the
State"); see also Franchise Agreement § 23.5 (excluding from
forum clause favoring the Eastern District of Michigan any
"actions brought under the Maryland Franchise Registration and
Disclosure Law.")  While Defendants argue that this provision
only gives Plaintiffs the right to file claims under Maryland's
Franchise provisions in Maryland state courts, see ECF No. 48 at
10, they provide no support for that position.

As an alternative to dismissal under Rule 12(b)(3), Defendants argue that this Court should transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).  In considering a motion to transfer under § 1404, the Court looks to the following four factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice.  Cross v. Fleet Reserve Ass'n Pension Plan, 383 F. Supp. 2d 852, 856 (D. Md. 2005).  To prevail on a motion to transfer venue under § 1404, a "defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." CoStar Realty Info., Inc. v. Meissner, 604 F. Supp. 2d 757, 770 (D. Md. 2009).  Ultimately, the decision whether to transfer venue is committed to the sound discretion of the trial court. See Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1257 (4th Cir. 1991).

Given that Plaintiffs are entitled to proceed in Maryland against Defendants on their claims for violations of Maryland's franchise statute, it would serve neither the convenience of the parties nor the interests of justice to compel Plaintiffs to split this action and to proceed on their remaining claims in Michigan.  As to witnesses, both Maryland Plaintiffs and

14

Michigan Defendants will offer testimony as to what was said or
not said in connection with the formation of the franchise
agreement.  That there are numerically more Defendants should
not tip the scale to Michigan.  In addition, the witnesses who
will offer testimony regarding the cause of the demise of
Plaintiffs' franchise will be predominately Maryland witnesses.

To the extent that Defendants seek to alter the balance of
transfer factors by reliance on the forum selection clause in
the Franchise Agreement, the Court is not persuaded.  First and
foremost, given that the Fourth and Sixth Circuits have
recognized that the arbitration clause was invalid because "WW,
LLC was 'fraudulently induced into signing' the franchise
agreement"  419 F. App'x 372 at *3 (quoting the Sixth Circuit's
opinion, 300 F. App'x 415 at *6), the same reasoning should
apply to the validity of the forum clause.

Furthermore, as the Fourth Circuit noted when holding that
this Court abused its discretion in not reopening the case,

> the existence of a forum selection clause as contained
> in the franchise agreement – even if we were to assume
> that it survived the vacated franchise agreement –
> would not dictate a different result.  That clause
> would not strip the district court of jurisdiction,
> and it would not even mean that venue was
> automatically improper."

Id. at *5 (citing 28 U.S.C. § 1404(a); P.M. Enterprises v. Color
Works, Inc., 946 F. Supp. 435, 440 (S.D.W. Va. 1996)).
Significantly, in the decision cited by the Fourth Circuit, P.M.

Enterprises, the district court noted that, while forum selection clauses are presumptively enforceable, that presumption is "not absolute and, therefore, may be overcome by a clear showing that they are 'unreasonable' under the circumstances." 946 F. Supp. at 441 (internal quotations omitted). "Choice of forum provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; . . . or (4) their enforcement would contravene a strong public policy of the forum state." Id. Here, we have both fraud in the inducement as found by the Sixth and Fourth Circuits as well as a strong public policy favoring litigation in Maryland as reflected in Maryland's Franchise Registration and Disclosure Law.

Defendants' motion to dismiss or to transfer will be denied.

### C. Motion to Amend Complaint

As noted above, the primary difference between the Complaint and the Amended Complaint is the addition of a RICO claim in the Amended Complaint. Plaintiffs assert that they first learned facts supporting this claim through the arbitration process in 2008. Because this action had been stayed, the first opportunity to amend the Complaint arose when the Fourth Circuit issued the mandate remanding the case to this Court on April 14, 2011. Plaintiffs attempted to file the

16

Amended Complaint on April 26, 2011, and filed their motion for leave to file an amended complaint on June 7, 2011.

While acknowledging that no answer has yet been filed in this action and no scheduling order issued, Defendants opposed the motion to amend, arguing that it would be severely prejudicial to add a new claim this many years after the initial complaint was filed. Defendants twice aver in their opposition that Plaintiffs' claims have been "fully vetted" in arbitration and that the only additional discovery necessary at this point is an update to Plaintiffs' damages claim as the Coffee Beanery store they were operating has now been closed. ECF No. 56 at 2. Defendants further contend that adding the RICO count would "severely prejudice" them, "because adding that new claim will significantly increase the cost of discovery in this matter due to the complete change in the Plaintiffs' theory of liability." Id. at 4.

Plaintiffs disagree with Defendants' assessment of the status of this litigation and the Court concurs with Plaintiffs on that issue. Plaintiffs note that the only discovery permitted in the arbitration was a document request. Also, Defendants' reliance on the "full vetting" that occurred in arbitration completely ignores the fact that the award that came out of that arbitration was vacated. While six years may have

17

passed since this action was first filed, it essentially stands at square one.

Defendants also make a somewhat half-hearted effort to argue that amendment would be futile as Plaintiffs' RICO claims would be barred by the statutes of limitations. ECF No. 56 at 6.[5] While the RICO statute does not contain an express statute of limitations, the Supreme Court has established a four-year statute of limitations applicable to civil RICO actions. See Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987). Defendants acknowledge that the original complaint was filed within this four year period. ECF No. 56 at 6. The question then is whether this proposed amendment would "relate back" to the original filing.

Rule 15(c) provides that "an amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1). When applied in the context of amendments to complaints seeking to add RICO claims to actions previously limited to claims of

---

[5] In a separately filed "Memorandum in Support of Defendants' Response to Plaintiffs' Motion for Leave to Amend Complaint, ECF No. 56-1, Defendants offer additional argument based upon Maryland cases discussing the tolling of limitations periods. Id. at 8. This discussion ignores the doctrine of relation back under Rule 15.

fraud, courts have consistently found that the amendment would relate back under Rule 15. "[D]efendants are put on notice sufficient to satisfy Rule 15(c) when acts of malfeasance that become RICO predicate acts are first alleged under a different fraud theory. This is so even when the acts of fraud are not fully developed, and no hint of a future RICO claim is given." Feinberg v. Katz, Civ. No. 99-45, 2002 WL 1751135 at * 11 (S.D.N.Y. July 26, 2002) (internal quotation omitted). See also Benfield v. Mocatta Metals Corp., 26 F.3d 19, 23 (2d Cir. 1994) (noting that, while RICO requires more in the way of evidence than common law fraud claims, proof of a RICO cause of action nonetheless involves evidence of the underlying fraudulent acts pleaded by the plaintiff and, therefore, the defendant was placed on notice that a RICO claim, based in large part on the fraud already alleged, might be made against it); Daniels v. Bursey, 313 F. Supp. 2d 790, 811 n.7 (N.D. Ill. 2004) (noting summarily that plaintiffs' RICO claim related back to the original complaint, which only contained a common law fraud claim, since both claims arose from the same conduct); Reynolds v. Condon, 908 F. Supp. 1494, (N.D. Iowa 1995) (allowing relation back of a newly alleged RICO claim where the original complaint alleged only fraud because the RICO predicate acts arose from the same "nucleus of operative fact" as the fraud claim).

While the Court finds Defendants' contentions as to the timeliness of Plaintiffs' amendment to be without merit, Defendants also contend that amendment would be futile because the Amended Complaint fails to adequately state a RICO claim. Defendants proffer a number of ways in which Plaintiffs' proposed RICO claim is insufficient.  See ECF No. 56-1 at 4-8. Several of those arguments have some merit but one is dispositive.

Defendants argue that the Amended Complaint failed to state a valid RICO claim because, under Fourth Circuit precedent, "enterprise" as defined under RICO, "'was meant to refer to a being different from, not the same as or part of the person whose behavior the act was designed to prohibit.'"  ECF No. 56-1 at 5 (quoting Entre Computer Centers, Inc. v. FMG, 819 F.2d 1279, 1287 (4th Cir. 1987)).  Thus, The Coffee Beanery cannot be part of an "enterprise" when it is already the "person" whose behavior the act is designed to punish.  Id.  The Amended Complaint clearly identifies The Coffee Beanery both as a "person" whose racketeering activity caused them harm, Am. Compl. ¶¶ 90-93, and as the "enterprise."  Id. ¶ 91.  Thus, Plaintiffs have not properly alleged an enterprise under RICO. See Busby v. Crown Supply, Inc., 896 F.2d 833, 840 (4th Cir. 1990) (noting that the holding that the alleged "person" who violates § 1962(c) must be different from the "enterprise," "has

been widely followed throughout the circuits, and we have no occasion now to question its correctness").[6]

While Defendants clearly raised this issue in opposing the motion to amend, Plaintiffs offered no response to this argument. Finding for this and other reasons that the allegations in the Amended Complaint fail to elevate Plaintiffs' common law fraud claims to a claim for racketeering, the Court will deny the motion to amend in so far as it seeks to add this claim (Count V). The Court will allow amendment as to the remaining changes.

## III. CONCLUSION

For the reasons stated above, the Court will issue an order denying Defendants' motion to dismiss or transfer this action. The Court will grant Plaintiffs' motion to amend the Complaint, except as to the addition of the claim under RICO. The Court will also issue a separate scheduling order so that this dispute can be litigated and resolved on its merits as expeditiously as possible.

---

[6] The Court notes that while Defendants' is an accurate account of Fourth Circuit law as to § 1962(c), the Fourth Circuit has held that the offending person and the enterprise need not be separate for there to be a violation of § 1962(a). Busby, 896 F.2d at 841 (overturning Entre Computer at to § 1962(a)). While Plaintiffs do not specify under which subpart of § 1962 they bring their claim, Defendants assume that they are attempting to do so under § 1962(c). ECF No. 56-1 at 7. The Court agrees that subpart (c) is certainly the most likely candidate and Plaintiffs have offered nothing to challenge that assumption.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: October 26, 2011