IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WW, LLC, <u>et al</u>.                    *
                                          *
         v.                         *   Civil Action WMN-05-3360
                                          *
THE COFFEE BEANERY, LTD.,           *
<u>et al.</u>                             *
                                          *

*    *    *    *    *    *    *    *    *    *    *    *    *

<u>MEMORANDUM</u>

Pending before this Court are a number of motions: (1) Defendants' Motion for Partial Dismissal, ECF No. 86; (2) Defendants' Supplemental Motion to Dismiss for Lack of Jurisdiction, ECF No. 92; and (3) Defendants' Motion to Take Judicial Notice and Request to Strike, ECF No. 112.  The parties have fully briefed these motions.  Plaintiffs have also filed a Motion for Sanctions, ECF No. 109, and a renewed Motion for Sanctions, ECF No. 113, pursuant to Rule 11.

Upon consideration of the pleadings, facts and applicable law, the Court determines that (1) no hearing is necessary, Local Rule 105.6, (2) the Supplemental Motion to Dismiss will be denied, (3) the Motion to Take Judicial Notice and Request to Strike will be granted in part and denied in part, (4) the Motion for Partial Dismissal will be granted in part and denied in part, and (5) the Motions for Sanctions will be denied.

<u>I. FACTUAL & PROCEDURAL HISTORY</u>

In short, this is a case involving a dispute between a franchisee and franchisor.  Plaintiff WW, LLC t/a The Coffee Beanery Café (WW), is the corporate entity created by Plaintiffs Deborah Williams and Richard Welshans, after they entered into a Franchise Agreement in June 2003 with Defendant The Coffee Beanery Ltd. (Coffee Beanery) to open a Coffee Beanery café in Annapolis, Maryland.  Plaintiffs operated the café from 2004 until November 2007, but, for a number of reasons, never made any profit and in fact incurred operating losses of nearly $325,000.  In 2005, after losing money on this endeavor, which had allegedly been represented as a "proven concept," Plaintiffs filed suit against Coffee Beanery and seven of its officers: JoAnne Shaw, Julius Shaw, Kevin Shaw, Kurt Shaw, Ken Coxen, Owen Stern, and Walter Pilon (the "Individual Defendants").[1]

As recapped by this Court in its Memorandum dated October 26, 2011, ECF NO. 62, this case has already had a long and tortured history.  It has been the subject of an eleven-day arbitration in Michigan, the result of which was confirmed by the United States District Court for the Eastern District of Michigan, and then vacated by the Sixth Circuit Court of Appeals.  Subsequently, Plaintiffs requested that this Court

---

[1] For a more extensive and detailed statement of facts, please see this Court's Memorandum dated October 26, 2011, ECF No. 62.

reopen the present case, which Judge Andre Davis[2] had closed after the Eastern District of Michigan confirmed the arbitration award and entered judgment.  Judge Davis entered an order denying the motion, and this order was subsequently reversed and vacated by the Fourth Circuit.

The Fourth Circuit issued its mandate on April 14, 2011. On April 21, 2011, Plaintiffs filed a motion to reopen the case, and on April 26, 2011, filed an Amended Complaint, ECF No. 44. The Amended Complaint added a Racketeer Influenced and Corrupt Organization (RICO) claim and amended some of the factual allegations in the original complaint.  Defendants filed a number of motions in response, including a Motion to Dismiss, or in the Alternative, to Transfer the Case to the Eastern District of Michigan, ECF No. 48, based on an argument that venue was not proper in this Court.  The Court granted Plaintiffs leave to file the Amended Complaint but struck Count V, the new RICO claim, ECF No. 63, and dismissed Defendants' Motion to Dismiss, or in the Alternative, to Transfer, holding that Maryland is an appropriate venue for this proceeding.  See ECF No. 62 at 12-16.

Thereafter, on January 13, 2012, Plaintiffs filed a Motion for Leave to File Second Amended Complaint (SAC), ECF No. 76. The SAC contains additional facts and four new RICO counts.

---

[2] Judge Davis was assigned to this case prior to his elevation to the Fourth Circuit.

This motion was unopposed, and granted on March 1, 2012.  As such, the docket reflects that the SAC was filed on March 1, 2012.

On March 23, 2012,[3] Defendants filed a Motion for Partial Dismissal, seeking to dismiss the newly added RICO claims, in addition to the claim for detrimental reliance and claims against the Individual Defendants.  Then on April 9, 2012, Defendants filed a "Supplemental Motion to Dismiss," seeking dismissal of all claims against the Individual Defendants for lack of personal jurisdiction.  Plaintiffs filed an opposition to both motions and also filed two Motions for Sanctions under Rule 11, arguing that the filing of the Supplemental Motion to Dismiss is "improper," "frivolous," and "sanctionable conduct."  See ECF Nos. 109, 113.[4]  Defendants have notified the Court that, pursuant to Local Rule 105.8(b), it will not file an opposition unless the Court would like to receive a response.  See ECF No. 114.  The Court will address the pending motions in what it considers to be the most logical order.

---

[3] Defendants initially filed the Motion for Partial Dismissal on March 14, 2012, but filed an Amended version on March 23, 2012, to correct the omission of several individual defendants from the original motion.  See ECF No. 87 (correspondence from Defendants' counsel explaining need to amend initial motion).

[4] The Motion for Sanctions filed on May 16, 2011, was temporarily withdrawn by Plaintiffs to allow Defendants an opportunity to withdraw the offending Supplemental Motion to Dismiss.  See ECF No. 110.

## II. SUPPLEMENTAL MOTION TO DISMISS

Defendants have filed a Supplemental Motion to Dismiss pursuant to Rule 12(b)(2) arguing that the Court must dismiss all claims pled against the Individual Defendants because this Court may not properly exercise jurisdiction over their persons. Plaintiffs have opposed the Supplemental Motion, arguing, among other things, that by not asserting this defense earlier, Defendants have waived it.

Federal Rule of Civil Procedure 12 specifically states that a defense of lack of personal jurisdiction is waived if not raised at the same time as all other Rule 12 defenses.  See Fed. R. Civ. P. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion") and 12(h)(1) (describing lack of personal jurisdiction as a waivable defense).  Therefore, a defendant must assert this defense "at the time the first significant defensive move is made— whether it be by way of a Rule 12 motion or a responsive pleading."  Wright & Miller, Federal Practice & Procedure: Civil 3d § 1391.  This is so even if a plaintiff files an amended complaint, as "amendment of the complaint. . . does not revive the right to interpose defenses or objections which might have been made to the original complaint."  Lanehart v. Devine, 102 F.R.D 592, 594 (D. Md.

1984) (internal citation omitted); <u>see also</u> <u>Rowley v. McMillan</u>,
502 F.2d 1326, 1332-33 (4th Cir. 1974); <u>Maxtena, Inc. v. Marks</u>,
Civ. No. DKC-11-0945, 2012 WL 113386 at *10 (D. Md. Jan. 12,
2012).  As stated by the Fourth Circuit,

> an amendment to the pleadings permits the responding
> pleader to assert only such of those defenses which may be
> presented in a motion under Rule 12 as were not available
> at the time of his response to the pleading. An unasserted
> defense available at the time of response to an initial
> pleading may not be asserted when the initial pleading is
> amended.

<u>Rowley</u>, 502 F.2d at 1333.

As the defense for lack of personal jurisdiction was
available when Plaintiffs initially filed the complaint on
December 15, 2005, the only opportunity that Defendants had to
raise the defense was in its response to that initial complaint,
via either a responsive pleading or a Rule 12 motion.  At that
time, Defendants, including the Individual Defendants, chose to
file a motion to dismiss under Rules 12(b)(1)for lack of subject
matter jurisdiction and 12(b)(6) for failure to state a claim
for relief, relying on the existence of an arbitration agreement
between the parties.  ECF No. 5.  For whatever tactical reason,
the Individual Defendants did not make any arguments based on
lack of personal jurisdiction.[5]  Moreover, the Individual

---

[5] This motion was terminated after the case was stayed and
administratively closed, so Judge Davis never made a decision on
the merits of the motion.  <u>See</u> ECF Nos. 14, 15.

Defendants yet again failed to seek dismissal for lack of personal jurisdiction when they, along with Coffee Beanery, filed a motion to dismiss the Amended Complaint.[6]  This motion, ECF No. 48, sought dismissal pursuant to Rule 12(b)(3) for improper venue.  The defense of lack of personal jurisdiction was not raised until all Defendants filed an Answer to the Amended Complaint, ECF No. 77, when it was listed as an affirmative defense.  At this point, however, the defense had already been waived.

The Individual Defendants make a number of arguments suggesting that they have not waived this defense.  They attempt to suggest that Rule 12(h) only creates a "rebuttable presumption" of waiver because personal jurisdiction is a fundamental constitutional right that cannot be inadvertently waived.  See ECF No. 106 at 3-4.  The Court was unable to find mention of such a "rebuttable presumption" in any of the cases it reviewed regarding waiver of the personal jurisdiction defense, and the cases cited by Defendants to support this assertion deal with distinguishable constitutional principles.  See, i.e., Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999) (sovereign immunity);

---

[6]Though it was likely too late to make such an argument in this second motion, the Individual Defendants may have argued that none of its defenses had yet been waived because the Motion to Dismiss the initial complaint was terminated before the Court considered its merits.

Bueno v. City of Donna, 714 F.2d 484 (5th Cir. 1983) (procedural due process related to termination of employment).  In fact, the Supreme Court has expressly stated that while a party may not consent to or waive the requirement of subject matter jurisdiction, which flows from Article III of the Constitution, "[n]one of this is true with respect to personal jurisdiction." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).  This is because personal jurisdiction flows from the Due Process Clause, which protects an individual's liberty interest.  Id.  As it is an individual right, it can be waived by the individual.  Id. at 703.  The Supreme Court goes so far as to list the variety of ways in which personal jurisdiction can be waived by express or implied consent, and specifically notes that "under Rule 12(h), Federal Rules of Civil Procedure, '[a] defense of lack of jurisdiction over the person ... is waived' if not timely raised in the answer or a responsive pleading."  Id. at 704 (quoting Rule). It concludes by saying, "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not."  Id. at 704-705.

     As the Individual Defendants did not raise the personal jurisdiction defense in their initial motion, it has been waived and can no longer be asserted.  "To permit this defense to be raised now would undermine the very purpose of Rule 12(g), (h),

which is the avoidance of time-consuming, piece-meal litigation of pre-trial motions." Tiernan v. Dunn, 295 F. Supp. 1253, 1256 (D.R.I. 1969).  For these reasons, the Court will dismiss the Supplemental Motion to Dismiss.[7]

## III. MOTION TO TAKE JUDICIAL NOTICE AND REQUEST TO STRIKE

Defendants have filed a motion requesting that the Court (1) take judicial notice that Defendant Kevin Shaw was convicted of the misdemeanor crime of larceny under $100, and not for the supposed felony of grand larceny, and (2) strike all allegations in the SAC and references in other pleadings that refer to Kevin Shaw's supposed felony conviction.  ECF No. 112.

The issue of Kevin Shaw's supposed felony conviction first arose during the arbitration proceedings that took place between

---

[7] The Court is troubled by the filing of the Supplemental Motion given the fact that both Rule 12 and related case law clearly state that the defense of personal jurisdiction must be raised at the first opportunity, otherwise it is waived.  Plaintiffs suggest that the motion is "frivolous" and its filing is part of a "deliberate scorched earth strategy employed to cause expense to Plaintiffs and delay in resolution of this action."  ECF No. 113 at 2.  While the Court will not be so quick to jump to this conclusion given that the filing of the Supplemental Motion appears to be the first instance of potentially problematic conduct and it has not caused any delay because it was simultaneously briefed with a timely Rule 12(b)(6) motion, it will issue a strong warning to Defendants and their counsel that it will not in the future tolerate any type of strategy that will result in unwarranted delay of the case or cause the Court to waste resources ruling on poorly supported motions. Notwithstanding, as the Court is not convinced that the Supplemental Motion was "presented for any improper purpose," it will deny both the Motion and Renewed Motion for Sanctions.  See Fed. R. Civ. P. 11(b)(1).

the parties in early 2007.  On cross-examination, counsel for

Plaintiffs asked Mr. Shaw,[8] "have you ever been convicted of a

crime involving theft or dishonesty?"  ECF No. 112-3 at 2.  Mr.

Shaw answered that yes, he had, and explained:

> When I was in college, I was out with a buddy of mine and
> we were driving down the road picking up construction cones
> and throwing them in the back seat of the car, and we
> continued to drive down the road until the police officer
> saw all the orange construction cones in the back of the
> car and he stopped us and asked us what we were doing with
> them.

Id. at 3.  Counsel then queried, "You were charged with grand

larceny," and Mr. Shaw answered, "Yes, it was over a hundred

dollars so it was considered grand larceny."  Id.  After

additional questioning, Mr. Shaw stated that he was put on

probation and that his conviction was to be expunged at the

completion of his probation, but because he did not complete

probation, the conviction stayed on his record.  Id. at 5.  This

apparently was the entirety of the evidence presented to the

arbitrator regarding Mr. Shaw's past criminal history.

After the completion of the arbitration proceedings, the

arbitrator issued an "Award of Arbitrator," stating her findings

of fact and conclusions of law.  The Award was favorable to

Coffee Beanery.  Relevant to the issue presently before the

Court, the arbitrator found that

---

[8]Any reference to "Mr. Shaw" in this sub-section refers to
Defendant Kevin Shaw.

> [Coffee Beanery] was not required to disclose to
> [Plaintiffs] that Kevin Shaw has a felony conviction for
> grand larceny as it is not the type of felony conviction
> subject to disclosure.  Michigan and Maryland franchise
> laws limit such disclosure to felonies that involve fraud,
> embezzlement, fraudulent conversion, or misappropriation of
> property.

ECF No. 112-10 at 4.

Plaintiffs filed a motion with the District Court for the Eastern District of Michigan to vacate the award, but did not dispute or make any reference to the arbitrator's findings related to Mr. Shaw's conviction.  See ECF No. 112-11.  The Eastern District confirmed the Award of Arbitrator.  Plaintiffs then filed a motion for reconsideration, this time including in their argument the fact that the arbitrator misapplied Maryland franchise law when she determined that Mr. Shaw's felony conviction for grand larceny was not required to be disclosed, even though grand larceny is a crime involving misappropriation of property.  See ECF No. 112-13 at 8.  In making this argument, Plaintiffs stated that "[t]here is no dispute that Kevin Shaw . . . was convicted of the felony of grand larceny."  Id.  The Eastern District held that Plaintiffs had waived this argument by not raising it earlier, and thus refused to vacate the arbitration award.

Plaintiffs then appealed the Eastern District's decision to the Sixth Circuit Court of Appeals, raising a number of issues, the last of which was the argument stated above, that the

11

arbitrator misapplied Maryland franchise law.  See ECF No. 117-8 at 18 (arguing that "Kevin Shaw's admitted felony conviction for grand larceny for theft of traffic cones on a public highway certainly involves misappropriation of property and had to be disclosed.")  The Sixth Circuit reversed the Eastern District's judgment and vacated the arbitrator's award, holding that "[b]ecause Shaw failed to disclose his felony conviction for grand larceny in violation of [Maryland franchise law], we conclude that the Arbitrator's award shows a manifest disregard of the law."  Coffee Beanery, Ltd. v. WW, L.L.C., 300 Fed. App'x 415, 419 (6th Cir. 2008) (also at ECF No. 112-15 at 7).  The Sixth Circuit further held that because the felony was not disclosed to Plaintiffs as statutorily required before they entered into the franchise agreement, Plaintiffs should not be bound by the agreement's arbitration provision.  Id. at 421 (ECF No. 112-15 at 12).  The Sixth Circuit did not address any of Plaintiffs' other arguments for reversal in its opinion.

At this point, Defendants filed a Petition for Rehearing, arguing that the Sixth Circuit erred and exceeded its authority by vacating an arbitration award based solely on an arbitrator's "manifest disregard of the law."  See ECF No. 112-16 at 7. Defendants also noted, for the first time in the history of the case, in a footnote, that, "In fact, Kevin Shaw was never convicted of a felony," and explained that after searching the

Michigan state criminal records they determined that Kevin Shaw pled guilty to a charge of larceny under $100, which is a misdemeanor, not a felony.  Id. at 14 n.1.  The Sixth Circuit issued an Amended Opinion, but did not change its ruling or address the footnote regarding Mr. Shaw's conviction.

Once the case was reopened in this Court, Plaintiffs filed an Amended Complaint which included an allegation that Coffee Beanery had failed to disclose Mr. Shaw's "felony conviction for grand larceny."  ECF No. 44 at ¶¶ 45, 67e.  This allegation is also found in the SAC.  ECF No. 84 at ¶¶ 23k, 71g, 112e.  Defendants have contacted counsel for Plaintiffs and requested that they remove these allegations from their complaint as, in Defendants' view, they are inaccurate in light of Defendants' discovery that Mr. Shaw was only convicted for a misdemeanor.  Plaintiffs have refused to do so.

Preliminarily, the Court will note that even though this issue has apparently taken on some importance to the parties, particularly in light of the Sixth Circuit's opinion, in the scheme of this entire lawsuit the fact that, nearly 20 years before Plaintiffs ever met Mr. Shaw, he pled guilty to some crime related to the stealing of traffic cones, is a rather minor point.  The real issues, as this Court sees it, have to do with the allegations related to Coffee Beanery's failure to disclose or fraudulent misrepresentation of information, such

13

as, for example, projected investments and historical

performance data, more directly related to the café-concept

franchise that Plaintiffs purchased.

Federal Rule of Evidence 201(b) permits a court to take

judicial notice of a fact "that is not subject to reasonable

dispute because it . . . can be accurately and readily

determined from sources whose accuracy cannot reasonably be

questioned."  Moreover, Rule 201(c) requires that a court "must

take judicial notice if a party requests it and the court is

supplied with the necessary information."  In support of their

request, Defendants have provided the Court with a "Certificate

of Conviction" issued by the 67th District Court for the state of

Michigan that states the date on which Kevin Shaw was convicted

for a "larceny under $100."  This certificate is signed by the

Deputy Clerk and contains a raised seal.  Court records are the

type of documents from which courts regularly take judicial

notice, see Colonial Penn Ins. Co v. Coil, 887 F.2d 1236, 1239-

40 (4th Cir. 1989), and this Court sees no reason to question

the accuracy of the Michigan state court that issued this

certificate.[9]  As such, the Court will take judicial notice that

---

[9] Plaintiffs suggest that the Court should not take judicial
notice of this document because it is not publicly available and
Plaintiffs have been unable to procure an official copy
themselves.  The Court notes, however, that Defendants have made
a number of offers to Plaintiffs regarding different ways for
Plaintiffs to procure their own copy or to verify that the

Mr. Shaw was convicted on April 24, 1985 for a violation of
750.3565, more commonly known as the offense of larceny under
$100, and that the offense was committed on July 27, 1984.  See
ECF No. 118-1 (hard copy on file in clerk's office).

The Court, however, will not take judicial notice that Mr.
Shaw was never convicted of a felony.  The Certificate provided
by Defendants does not specify from what conduct the referenced
larceny resulted or verify the absence of a felony conviction on
Mr. Shaw's criminal record; it merely states that Mr. Shaw was
convicted for a larceny under $100 on a certain date.  In the
absence of a source from which the non-existence of Mr. Shaw's
felony conviction can be accurately and readily determined, the
Court is not required to take judicial notice of this fact.

Furthermore, the Court will not strike the allegations in
the complaint related to Mr. Shaw's purported felony conviction.
While Rule 12(f) gives a court discretion to "strike from a
pleading an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter," such motions are generally
disfavored and should be granted infrequently.  See Waste Mgmt.
Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2011);
Renaissance Greeting Cards, 227 Fed. App'x. 239, 247 (4th Cir.
2007).  Courts have gone so far as to say that such motions

---

Certificate is authentic, including accompanying Mr. Shaw to the
Michigan clerk's office.  See ECF NO. 119-3 at 2.  Plaintiffs
have not accepted any of these proposals.

should be denied "unless the matter under challenge has 'no possible relation to the controversy and may prejudice the other party.'" <u>U.S. ex. Rel. Ackley v. Int'l Bus. Machines Corp.</u>, 110 F. Supp. 2d 395, 405 (D. Md. 2000) (quoting <u>Steuart Inv. Co. v. Bauer Dredging Constr. Co.</u>, 323 F. Supp. 907, 909 (D. Md. 1971)) (additional citations omitted).  As the allegations related to Mr. Shaw's purported felony conviction are relevant to the case and whether Defendants violated section 14-216 of the Maryland Franchise Act by failing to disclose certain information, the Court need not grant the Motion to Strike.  Furthermore, though Defendants argue that these allegations are "scandalous," there is support for them in the history of the case and the opinions written by two Courts of Appeals as discussed <u>supra</u>.  Mr. Shaw will have the opportunity at trial to test these allegations and offer evidence that will presumably attempt to explain the perceived misunderstanding that has led to Plaintiffs' allegation that he was convicted of a felony.  For these reasons, the Motion will be granted in part and denied in part.

## IV. MOTION FOR PARTIAL DISMISSAL

Defendants' Motion for Partial Dismissal seeks dismissal, under Rules 12(b)(6) and 9(b), of four newly pled RICO counts, the claim for detrimental reliance, and all counts pled against the Individual Defendants.

When Plaintiffs filed the SAC, they added four new RICO counts: Counts V and VI, brought pursuant to 18 U.S.C. § 1962(c), against JoAnne Shaw, Julius Shaw, Kevin Shaw, Kurt Shaw, and Owen Stern[10] ("Individual RICO Defendants"), and Coffee Beanery, respectively; and Counts VII and VIII, brought pursuant to 18 U.S.C. § 1962(d), against Julius Shaw, Kevin Shaw, Kurt Shaw, and Owen Stern,[11] and against JoAnne Shaw, Julius Shaw, Kurt Shaw, and Owen Stern,[12] respectively.  In support of these new counts, Plaintiffs have made additional allegations related to (1) the misrepresentations made in Coffee Beanery's annual Uniform Franchise Offering Circulars (UFOCs), published from September 15, 2002, until the present, (2) the material information that was allegedly omitted from the UFOCs, and (3) other non-party franchisees who were allegedly defrauded by Defendants.  Specifically Plaintiffs contend that the Coffee Beanery "café concept" was promoted to franchisees as a proven and money-making concept, when in fact Defendants knew that only

---

[10] The Court notes that individual defendants Ken Coxen and Walter Pilon are not named in the RICO counts.

[11] Count VII is not pled against JoAnne Shaw, but instead alleges in the alternative to Count V that the Defendants named in Count VII conspired with JoAnne Shaw in violation of 18 U.S.C. § 1962(d).

[12] Like Count VII, Count VIII is also a claim in the alternative to Claim V: it is not pled against Kevin Shaw, but instead alleges that the Defendants named in Count VIII conspired with Kevin Shaw in violation of 18 U.S.C. § 1962(d).

one café store, which was uniquely situated, had ever been successful. Franchisees relied on this information, paid the franchise fee and invested in Coffee Beanery café franchises, only to lose a significant amount of money when the stores failed.

In evaluating a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept as true all well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A court need not accept a plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

18

reviewing court to draw on its judicial experience and common sense." Id. at 679.

## A. RICO Statute of Limitations

Defendants first argue that the newly pled RICO claims must be dismissed because they are barred by RICO's four year statute of limitations.  See Potomac Elec. Power Co. v. Electric Motor & Supply, Inc., 262 F.3d 260, 266 (4th Cir. 2001) (stating that civil RICO suits are governed by a four year statute of limitations).  This period of limitations runs from the date when the plaintiff discovered, or should have discovered, the injury.  Id.  Notwithstanding, if an amended complaint "relates back" to the original, timely-filed pleading, then, pursuant to Rule 15(c), it will not be barred by the applicable statute of limitations.  See Fed. R. Civ. P. 15(c).

Plaintiffs filed their original complaint on December 15, 2005.  This complaint contained allegations related to conduct that occurred in 2003 while Plaintiffs were deciding whether to invest in a Coffee Beanery franchise.  Specifically, the complaint alleges certain misrepresentations made by Defendants both in the UFOC and in person, and specifies material facts that Defendants allegedly failed to disclose before Plaintiffs signed the franchise agreement.  Defendants do not contest that the original complaint was timely filed.

Plaintiffs filed for leave to file the First Amended Complaint (FAC) on April 26, 2011.  The FAC included a few additional facts, but mainly contained the same allegations found in the original complaint.  The FAC also included a new civil RICO claim, based on the Defendants' alleged participation "in a pattern of racketeering activities by sending out false and fraudulent UFOCs to potential franchisees through the wires and the U.S. mail on multiple occasions over a ten year period of time."  ECF No. 44 at ¶ 90.  Defendants challenged this claim as untimely, but the Court held that it related back to the original complaint.  See ECF No. 62 at 19-20.  Notwithstanding, the Court dismissed the FAC's civil RICO claim on other grounds.

Plaintiffs have since filed the substantially augmented SAC, in which they have included new factual content in an attempt to correct the deficiencies of the FAC's RICO claim. They have included new allegations regarding the misrepresentations and material omissions made in the UFOCs issued by Coffee Beanery from 2002 to the present and have alleged facts regarding other franchisees that were "victimized" by Coffee Beanery.  See ECF No. 84.  Defendants argue that the SAC does not relate back to either of the timely filed previous complaints because "the SAC injects entirely new legal and evidentiary issues that drastically alter the scope and focus of this litigation."  ECF No. 86-1 at 4.  They further argue that

the "new theories of liability, based on completely new factual

allegations, do not draw on the same nucleus of operative fact

in the original complaint." Id. at 5.

As this Court previously discussed in its October 26, 2011,

Memorandum, see ECF No. 62 at 18, Rule 15(c) provides that "an

amendment to a pleading relates back to the date of the original

pleading when . . . the amendment asserts a claim . . . that

arose out of the conduct, transaction, or occurrence set out –

or attempted to be set out – in the original pleading." Fed. R.

Civ. P. 15(c)(1).  When applied in the context of amendments to

complaints seeking to add RICO claims to actions previously

limited to claims of fraud, courts have consistently found that

the amendment would relate back under Rule 15.  "[D]efendants

are put on notice sufficient to satisfy Rule 15(c) when acts of

malfeasance that become RICO predicate acts are first alleged

under a different fraud theory.  This is so even when the acts

of fraud are not fully developed, and no hint of a future RICO

claim is given." Feinberg v. Katz, Civ. No. 99-45, 2002 WL

1751135 at * 11 (S.D.N.Y. July 26, 2002) (internal quotation

omitted); see also Benfield v. Mocatta Metals Corp., 26 F.3d 19,

23 (2d Cir. 1994) (noting that, while RICO requires more in the

way of evidence than common law fraud claims, proof of a RICO

cause of action nonetheless involves evidence of the underlying

fraudulent acts pled by the plaintiff and, therefore, the

21

defendant was placed on notice that a RICO claim, based in large
part on the fraud already alleged, might be made against it);
Daniels v. Bursey, 313 F. Supp. 2d 790, 811 n.7 (N.D. Ill. 2004)
(noting summarily that plaintiffs' RICO claim related back to
the original complaint, which only contained a common law fraud
claim, since both claims arose from the same conduct); Reynolds
v. Condon, 908 F. Supp. 1494, 1506  (N.D. Iowa 1995) (allowing
relation back of a newly alleged RICO claim where the original
complaint alleged only fraud because the RICO predicate acts
arose from the same "nucleus of operative fact" as the fraud
claim).

As illuminated by the case law, the primary consideration
when determining whether a RICO claim relates back to an earlier
pleading is whether the factual allegations are substantially
similar.  The fact that the RICO claim may introduce new legal
theories is inconsequential.  Therefore, Defendants' argument
that the injection of new legal issues and theories of liability
precludes the SAC from relating back is without merit.
Moreover, though Defendants argue that the SAC introduces
"completely new factual allegations," this will not prevent the
SAC from relating back.  The RICO predicate acts share the same
"nucleus of operative fact" as the fraud claim alleged in the
original complaint, i.e., that Defendants' UFOCs contained
misrepresentations and fraudulent omissions that induced

22

Plaintiffs to invest in a Coffee Beanery café franchise.  Though
the SAC contains additional allegations regarding
misrepresentations made to other franchisees, courts acknowledge
that "RICO requires more in the way of evidence than common law
fraud claims," see Benfield, 26 F.3d at 23, and as such do not
hold that a complaint fails to relate back simply because it
contains the additional allegations that are needed to support a
RICO claim.  Moreover, the allegations regarding other
franchisees are substantially similar to those made with respect
to Plaintiffs in that they allege that Defendants made the same
misrepresentations and failed to disclose the same type of
information.  For these reasons, the Court determines that the
RICO claims are not barred by the statute of limitations.

## B. Sufficiency of RICO Allegations

Defendants next argue that Plaintiffs have failed to allege
sufficient facts to support the RICO claims alleged pursuant to
Sections 1962(c) and (d).

### 1. Section 1962(c)

Section 1962(c) provides, in pertinent part:

It shall be unlawful for any person employed by or
associated with any enterprise engaged in, or the
activities which affect, interstate or foreign commerce, to
conduct or participate, directly or indirectly, in the
conduct of such enterprise's affairs through a pattern of
racketeering activity.

18 U.S.C. § 1962(c).  To prove liability under this section, a plaintiff must establish four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

Defendants argue that Plaintiffs have failed to state a claim under either section of RICO because they have (1) failed to allege facts related to the predicate acts of racketeering with sufficient particularity; (2) failed to establish a pattern of racketeering activity that amounts to anything more than "garden variety" fraud; and (3) failed to adequately identify an enterprise.

### i. Racketeering Activity

"Racketeering Activity" is broadly defined to include the commission of several federal statutory and state common law offenses.  18 U.S.C. § 1961(1).  In support of their claims, Plaintiffs allege that Defendants participated in the "predicate acts" of mail fraud, 18 U.S.C. § 1341 and wire fraud, 18 U.S.C. § 1343.[13]

---

[13] Plaintiffs also allege that Defendants engaged in the predicate act of financial institution fraud, in violation of 18 U.S.C. § 1344.  While they concede that they do not have standing to recover for injuries inflicted on a bank as a result of this conduct, ECF No. 93 at 25, Defendants argue that they may still allege bank fraud as a predicate act in order to establish a pattern of racketeering activity.  As the Court will determine that the alleged predicate acts of mail and wire fraud

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud. . . a party must state with particularity the circumstances constituting fraud."  Thus, when mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with the particularity required by Rule 9(b).  See Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d. 464, 473 (D. Md. 2009); Lust v. Burke, 876 F. Supp. 1474, 1480 (D. Md. 1994).  To satisfy this requirement, the complaint must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  "A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D. Md. 2000)(citations omitted).  Notwithstanding, the Fourth Circuit has advised that "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied: (1) that the

---

are sufficient by themselves to establish a pattern of racketeering activity at this stage of the proceedings, the Court need not decide the more tenuous issue of whether Plaintiffs can also allege financial institution fraud as a predicate act.

defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784 (internal quotations and citations omitted).

To prove a claim for mail or wire fraud, a plaintiff must show that the "(1) defendant knowingly participated in a scheme to defraud, and (2) the mails or interstate wire facilities were used in furtherance of the scheme." Choimbol v. Fairfield Resorts, Inc., 428 F. Supp. 2d 437, 443 (E.D. Va. 2006). "The mailings or wirings do not have to contain the misrepresentations that defrauded the plaintiff, but merely be in furtherance of the fraudulent, material misrepresentation upon which the plaintiff relied to his detriment and may include mailings and wirings directed at nonparties." Proctor 645 F. Supp. 2d. at 473; Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 798-99 (D. Md. 1998).

Despite the high standard demanded by the Rule 9(b) particularity requirement, in the context of RICO mail fraud the Court may also consider the interplay of the more liberal notice pleading standard of Rule 8, which simply requires "a short and plain statement." Kerby, 992 F. Supp. at 799. Courts have acknowledged the difficulty that arises in pleading a RICO suit against multiple defendants, and have determined that it is not

necessary that a plaintiff elucidate every single detail of the alleged fraud. See id. (quoting extensively from Mylan Labs, Inc. v. Azko, N.V., 770 F. Supp. 1053, 1074-75 (D. Md. 1991)). These Courts have determined that, when balancing these rules,

> [t]he most basic consideration in making a judgment as to sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.

Id. at 800. Specifically, plaintiffs must adequately plead the "circumstances" of the fraud. Id. at 799.

The Court finds that Plaintiffs have alleged the predicate mail and wire fraud with sufficient particularity to satisfy Rule 9(b). They have very specifically alleged the circumstances surrounding the use of the mails with regard to the fraudulent UFOC with which they were provided, i.e., that on June 3, 2003, Coffee Beanery over-nighted a copy of the fraudulent UFOC, which was registered with the Maryland Attorney General's Office as of January 24, 2003. See SAC at ¶ 21. Plaintiffs have also specifically alleged which representations in the UFOC it believes are false and listed material facts that it believes were fraudulently omitted. See SAC at ¶ 22-23.

Plaintiffs further provide the names of seven other individuals who received through the mails or wires copies of allegedly fraudulent UFOCs dated from 2002 and 2003. SAC at ¶ 52. Plaintiffs then allege with particularity the fraudulent

misrepresentations and omissions contained in Coffee Beanery's UFOCs issued annually from September 2003 to October 2011.  SAC at ¶ 54-72.  Making all inferences in favor of Plaintiffs, the Court can construe these allegations to suggest that every potential franchisee from 2002 until at least 2011 was provided with a fraudulent UFOC, and that the majority of the fraudulent UFOCs were transmitted through the mail or wires.

While Plaintiffs have not provided details regarding when and to whom each and every one of the mailings was sent, they have certainly provided sufficient detail to put Defendants on notice of the fraud pled against them.  See VNA Plus, Inc. v. Apria Healthcare Group, Inc. 29 F. Supp. 2d 1253, 1263 (D. Kan. 1998) (noting that the requirements to plead specific instances of mail or wire fraud is "relaxed where there are 'numerous mailing of standardized documents containing identical false representations.'" (quoting City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 563, 545 (E.D.N.Y. 1987))).

Plaintiffs have outlined the alleged scheme to defraud, a time frame for the scheme, who was targeted by the scheme, the contents of the allegedly fraudulent communications that were sent using the mails and wires, and what Defendants hoped to obtain through the scheme.  They have also alleged the role the various Defendants played in the Coffee Beanery organization and that the Individual Defendants, as members of the management

28

team, continued to promote the café concept and send out
fraudulent UFOCs even though they knew that the concept had not
been successful.  Coupling these specific allegations with the
broader allegations that the Defendants used the mails as part
of the scheme to defraud other unnamed potential franchisees is
sufficient to meet the requirements of Rule 9(b).  See Proctor,
645 F. Supp. 2d at 474.

### ii.  Pattern

To state a claim for a violation of § 1962(c), a plaintiff
must allege a "pattern of racketeering activity."  The term
"racketeering activity" includes mail fraud and wire fraud.  See
18 U.S.C. § 1961(1)(B).  The "pattern" element requires at least
two acts of racketeering activity to be pled, see 18 U.S.C. §
1961(5), though, while a minimum of two predicate acts is
required, two acts alone do not necessarily establish a pattern.
Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 n. 14 (1985).

The Fourth Circuit has explained the purposes of this
requirement as follows:

> [It] ensure[s] that RICO's extraordinary remedy does not
> threaten the ordinary run of commercial transactions; that
> treble damage suits are not brought against isolated
> offenders for their harassment and settlement value; and
> that the multiple state and federal laws bearing on
> transactions ... are not eclipsed or preempted.

Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir.1989).[14]

---

[14] Defendants argue that the scheme alleged by Plaintiffs amounts
to little more than "garden variety" fraud, and thus does not

To establish a "pattern of racketeering activity," the plaintiffs must establish that (1) the predicate acts are related, and (2) they pose a threat of continued criminal activity.  H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).  In support of this element, a plaintiff may allege defendant's acts of fraud against both the plaintiff and against non-parties.  GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001) ("plaintiffs properly may allege acts of related fraud against other victims to establish a pattern of racketeering activity").

Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc., 333 F. Supp. 2d 418, 424 (D. Md. 2004) (quoting Anderson, 155 F.3d at 505-06). Plaintiffs allege that all of the representations were made for

---

rise to the level of a RICO claim.  While it is true that the Fourth Circuit has embraced a policy of being cautious when allowing a RICO claim to go forward based solely on predicate acts of mail and wire fraud, see, e.g., Al-Abood v. El-Shamari, 517 F.3d 225, 238 (4th Cir. 2000); Anderson v. Found. For Advancement, Educ. and Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998), the Court need not undertake a separate analysis to determine the "variety" of fraud alleged, but rather takes this caution as part of its analysis when determining whether Plaintiff has adequately pled a pattern of racketeering activity.

the express purpose of inducing Plaintiffs, and other potential franchisees, to invest in Coffee Beanery café franchises, and that the scheme involved providing the same fraudulent UFOCs and making the same false representations to franchisees in support of this end.  Essentially, as alleged, the predicate acts of mail and wire fraud were perpetrated an uncounted number of times against the same type of victim in a nearly identical manner.  In the context of a motion to dismiss, the Court finds these allegations sufficient to satisfy the relationship requirement.[15]

A plaintiff can fulfill the continuity-of-activity requirement by establishing either a closed- or open-ended pattern.  H.J., Inc. 492 U.S. at 241.  A "closed-ended" pattern of racketeering activity involves a course of related predicate acts during a substantial period of time which naturally comes to a close, id., while an open-ended pattern involves conduct "that by its nature projects into the future with a threat of

---

[15] Defendants' primary argument that Plaintiffs have not established a pattern is that they have only established a single instance of mail or wire fraud as a predicate racketeering act.  In light of the Court's determination that Plaintiffs in fact have sufficiently pled the existence of multiple acts of mail or wire fraud against multiple non-parties, in addition to the fact that the Fourth Circuit permits plaintiffs to allege related acts of fraud against non-party victims in order to establish a pattern of racketeering activity, see supra, this argument is a non-starter.

repetition.  Whitney, Bradley & Brown, Inc. v. Kammermann, 436 Fed. App'x 257, 259 (4th Cir. 2011).

Plaintiffs in this case allege an open-ended pattern of racketeering that continues to this day, and Defendants do not challenge that the continuity requirement has been satisfied. The alleged scheme to defraud Plaintiffs and other potential franchisees is ongoing as Defendants continue to distribute the allegedly fraudulent UFOCs through the mail and wires, with the same purported purpose of enticing franchisees to invest in Coffee Beanery cafés.  Moreover, there does not appear to be a finite goal, and the facts alleged suggest that Defendants will continue to use the allegedly fraudulent UFOCs to defraud franchisees until they are stopped.  Therefore, drawing all inferences in favor of Plaintiffs, as it must for purposes of the instant motion, the Court concludes that the SAC contains sufficient facts to support the continuity element.  See Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc., 197 F. Supp. 2d 298, 324; Thomas v. Ross & Hardies, 9 F. Supp. 2d 547, 554 (D. Md. 1998).

### iii. Enterprise

The final disputed element that Plaintiffs must prove to state a RICO claim is the existence of an "enterprise."  RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union

or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Consistent with this definition, an enterprise may be a single individual or corporation, or an association of individuals and corporations.  Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007); Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 609 F. Supp. 1055, 1064 (D. Md. 1985).

Under Section 1962(c), the alleged enterprise must be an entity whose members are "associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  The enterprise must be separate and distinct from the RICO defendants, Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir. 1982), and also have a legal structure distinct from the pattern of racketeering, Turkette, 432 U.S. at 583.

Moreover, Section 1962(c) only imposes liability on defendants who "conduct or participate, directly or indirectly in the conduct of an enterprise's affairs through a pattern of racketeering activity."  Thomas, 9 F. Supp. 2d at 554.  To determine whether a defendant is liable under this section, the Supreme Court has authorized use of the "operation or management" test, which requires that a defendant must have some part in directing the affairs of the enterprise in order to be

held liable under RICO.  Reves v. Ernst & Young, 507 U.S. 170,
179 (1993).  Although "[m]ere participation in the activities of
the enterprise is insufficient," liability is not limited to
upper management and those under their direction.  Thomas, 9 F.
Supp. 2d at 554.  Finally, the Supreme Court has determined
that, for purposes of pleading a RICO enterprise, an individual
is legally distinct from the corporation for which he or she
works.  See Cedric Kushner, 533 U.S. at 163.

       As discussed above, Plaintiffs alleged Section 1962(c) RICO
claims against two separate sets of Defendants: Count V against
the Individual RICO Defendants and Count VI against Coffee
Beanery.  Plaintiffs have alleged a number of different
combinations of RICO Defendants and enterprises operated or
managed by those Defendants.[16]  Defendants argue that all of the
alleged enterprises fail for a number of reasons, including
Plaintiffs' failure to plead with particularity the role of each
Defendant in the alleged enterprises and its failure to allege
the existence of enterprises that are distinct from the RICO
Defendants.

---

[16] Plaintiffs note, and Defendants do not dispute, that there is
no authority that limits their ability to plead multiple
theories of relief in support of their claims.  See ECF No. 93
at 28, n 29. (citing RaceRedi Motorsports, LLC v. Dart
Machinery, Ltd., 640 F. Supp. 2d. 660, 666 (D. Md. 2009)); see
also Fed. R. Civ. P. 8(d).

Defendants contend that Plaintiffs must plead the existence of an enterprise with particularity sufficient to satisfy Rule 9(b) and cite a number of cases in support.  These cases, however, do not support this contention, but more narrowly require that if the predicate act for a RICO claim is an act of fraud, then the allegations regarding that fraud must be pled pursuant to Rule 9(b).  See Robinson v. Fountainhead Title Group Corp., 252 F.R.D. 275, 279 (D. Md. 2008); DeSilva v. N. Shore-Long Island Jewish Health Sys., 770 F. Supp. 2d 497, 527 (E.D.N.Y. 2011); Lesavoy v. Lane, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004).  The cases do not, however, indicate that the other elements of the RICO claim must also be pled with the particularity required by 9(b).  Rather, it is generally accepted, that any non-fraud elements of a RICO claim may be pled pursuant to the less-stringent notice pleading standard of Rule 8.  See, e.g., Joy v. Countrywide Fin. Corp., No. 5:10-CV-218-FL, 2011 WL 3652697 at *5 (E.D.N.C. Aug. 19, 2011)("the sufficiency of a civil RICO claim is judged in accordance with the notice pleading requirement of Rule 8(a)"); Proctor, 645 F. Supp. 2d at 476 ("[Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the RICO claims. . . in addition to the predicate acts of mail and/or wire fraud." (emphasis in original)); Calabrese v. CSC Holdings, Inc., 283 F. Supp. 2d 797, 811

(E.D.N.Y. 2003) (citing In re Sumitomo Copper Litigation, 104 F. Supp. 2d 314, 319 (S.D.N.Y. 2000)).

Although the allegations contained within the RICO Counts themselves primarily recite boilerplate language with respect to the enterprises alleged and likely do not meet the requirements of Rule 8, the Counts also incorporate by reference the preceding paragraphs of the SAC that more specifically outline the alleged scheme and the role of the various Defendants in the Coffee Beanery organization.  These allegations indicate that all of the Individual RICO Defendants occupy formal leadership or upper management positions within Coffee Beanery, SAC at ¶ 5-10, and that they were aware of the poor success of the café concept.  SAC at ¶ 106f, 108d.  From these allegations the Court may infer that the Individual RICO Defendants played some role in directing the alleged fraud through their participation in the operation of, at the least, the alleged Coffee Beanery enterprise.  See Superior Bank, 197 F. Supp. 2d at 325.

Plaintiffs additionally allege that the Individual RICO Defendants and Coffee Beanery operated Plaintiff WW as an "innocent victim" enterprise.  See SAC at ¶¶ 150, 158. Defendants argue that this entity is not properly a RICO enterprise because Defendants could not have participated in its operation or management because they were "outsiders" without a formal position in the WW chain of command.

To state a RICO claim based on an "innocent victim" enterprise, a plaintiff must allege (1) a sufficient nexus between the racketeering activity and the enterprise, and (2) that defendants participated in the operation or management of the enterprise.  <u>Allstate Ins. Co. v. Weir</u>, No. 5:07-CV-498-D, 2008 WL 4877047 at *4, (E.D.N.C. Nov. 10, 2008) (citing <u>United States v. Grubb</u>, 11 F.3d 426, 439 N.24 (4th Cir. 1993)).  In this case, the Court may infer that a nexus exists because Defendants would have used WW, as it used its other franchisees, in its listing of franchises to promote the café concept and defraud other potential investors.  <u>See</u> SAC at ¶¶ 68, 70e-f, 71f (describing information about franchisees that Defendants omitted or used to promote the café concept).

The Court can further infer that Defendants, as the franchisor, participated in the operation or management of WW. Plaintiffs allege, and Defendants do not deny, that Defendants exerted significant control over WW through the franchise agreement by dictating, for example, the design of the WW store, the equipment that must be used, how many employees it must have on the payroll, and from which suppliers it must purchase non-coffee based beverages.  <u>See</u> SAC at ¶¶ 23g, 23l, 37, 39, and 41. Plaintiffs further allege that the failure of their business was a direct result of many of these requirements that were imposed on them by Defendants and that created inefficiencies and

excessive overhead costs.  Such an allegation clearly suggests that Defendants played some part in directing the enterprise's affairs.  See Reves, 507 U.S. at 185 (noting that an "outsider" may be liable if it can be shown that it conducted or participated in the conduct of the enterprise's affairs).

Based on the above analysis and construing all facts and inferences in favor of Plaintiffs, the Court can thus conclude that Plaintiffs have successfully alleged the existence of at least one enterprise to satisfy each of the RICO Counts brought pursuant to Section 1962(c).  As Plaintiffs have successfully alleged all of the elements to make a claim under Section 1962(c), these Counts will survive dismissal.[17]

### 2. Section 1962(d)

Section 1962(d) prohibits any person from conspiring to violate subsections (a) through (c) of Section 1962.  To allege a conspiracy claim, a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering."  Proctor, 645 F. Supp. 2d at 477 (quoting United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990)).  Furthermore, survival of a claim for conspiracy is dependent on

---

[17] In light of the fact that this litigation is still in its early stages and that Counts V and VI will survive dismissal regardless of any further analysis, the Court need not expend additional judicial resources to consider the validity of the additional alleged enterprises in this already lengthy memorandum.

a plaintiff first successfully stating a claim under § 1962(c).
See Foster v. Wintergreen Real Estate Co., 363 Fed. App'x 269,
275 n.6 (4th Cir. 2010).

Plaintiffs allege two conspiracies: that Defendants Julius
Shaw, Kevin Shaw, Kurt Shaw and Owen Stern conspired with JoAnne
Shaw (Count VII), and that Defendants JoAnne Shaw, Julius Shaw,
Kurt Shaw and Owen Stern conspired with Kevin Shaw (Count VIII),
to conduct the affairs of the enterprises discussed above
through a pattern of racketeering activity.

Defendants argue that the conspiracy claims fail because
(1) Plaintiffs have not established an underlying claim pursuant
to Section 1962(c), and (2) the alleged conspiracy claims are
barred by the intracorporate conspiracy doctrine.  The first
argument, obviously, is without foundation now that the Court
has decided Counts V and VI may go forward as alleged.

The intracorporate conspiracy doctrine holds that because
the acts of corporate agents are attributable to the corporation
itself, a corporation lacks the multiplicity of actors required
to form a conspiracy.  Walters v. McMahen, 795 F. Supp. 2d. 350,
358 (D. Md. 2011) (citing Marmott v. Maryland Lumber Co., 807
F.2d 1180, 1184 (4th Cir. 1986)).  As this Court has previously
noted, a corporation cannot conspire with its employees and
employees, when acting within the scope of their employment,
cannot conspire amongst themselves.  AGV Sports Group, Inc. v.

39

Protus IP Solutions, Inc., No. RDB 08-3388, 2009 WL 1921152, at
*4-5 (D. Md. July 1, 2009).  The Fourth Circuit has identified
two exceptions to the intracorporate conspiracy doctrine: (1)
when a corporate officer has an "independent personal stake" in
achieving the illegal objectives of the corporation, Greenville
Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir.
1974); ShoreGood Water Co. v. United States Bottling Co., No.
RDB 08-2470, 2009 WL 2461689 at *7 (D. Md. Aug. 10, 2009), and
(2) when the agent's acts are unauthorized.  Buschi v. Kirven,
775 F.2d 1240, 1252-3 (4th Cir. 1985).

     Plaintiffs have not alleged that any of the officers had an
independent personal stake, so the first exception does not
apply.  In their Opposition, however, Plaintiffs suggest that
the second exception should apply "[t]o the extent [Coffee
Beanery] defends against this action on the basis that the
Individual RICO Defendants' actions were beyond their scope of
authority."  ECF No. 93 at 41 n. 40.  Despite this attempt to
invoke the exception, Defendants have not asserted such a
defense, nor have Plaintiffs anywhere in the SAC alleged that
the Individual RICO Defendants were acting outside the scope of
their authority.  Plaintiffs argue that Coffee Beanery's
management is not limited to those individuals named in the
conspiracy counts, yet, even so, the SAC alleges that these
individuals were in the highest level of management, i.e., that

JoAnne Shaw is the President, Julius Shaw is the Chairman, Kevin Shaw is the Vice President of Development, Kurt Shaw is the Vice President of New Business Development, and Owen Stern is the Chief Operations Officer.  See SAC at ¶¶ 5-10.  Presumably they are the individuals steering the ship, so their authority is largely without limitation, and, as the scheme to defraud allegedly became the "regular way in which [Coffee Beanery] does business," SAC at ¶ 50, such conduct was likely within their scope of authority.

As neither exception applies, the intracorporate conspiracy doctrine will operate to bar Plaintiffs' claims brought under Section 1962(d), and the Court will dismiss Counts VII and VIII.

**C. Detrimental Reliance**

Though the Motion for Partial Dismissal primarily focuses on the RICO claims, Defendants also argue that the Detrimental Reliance claim, which was pled back in the original complaint, see ECF No. 1 at ¶¶ 67-70, should be dismissed.  They argue that because detrimental reliance provides an equitable remedy, it must be dismissed where, like in this case, "an express, enforceable contract exists governing the same subject matter." ECF No. 86 at 20 (citing Holland v. Psych. Assessment Res., Inc., No. CCB-04-437, 2004 WL 1368873 at *3 (D. Md. June 16, 2004)).  In support of this assertion Defendants point to the Franchise Agreement.  Plaintiffs correctly point out, however,

41

that the Sixth Circuit has previously determined that the Franchise Agreement was fraudulently induced, and thus is unenforceable, see Coffee Beanery, 300 Fed. App'x at 421, and thus its existence will not bar the claim for detrimental reliance.

In their Reply the Defendants backtrack from this argument and suggest that they really were arguing that Plaintiffs have failed to plead the elements of detrimental reliance.  To make a claim for detrimental reliance, Plaintiffs must allege 1) a clear and definite promise; 2) where the promisor has a reasonable expectation that the offer will induce action or forebearance on the part of the promise; 3) which does induce actual and reasonable action or forbearance by the promise; and 4) causes a detriment that can only be avoided by enforcement of the promise.  Pavel Enters., Inc. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md. 1996).  The Court agrees that the Plaintiffs have not alleged facts to establish these elements.  Plaintiffs allege a number of false representations that were made, but none of these amount to a "clear and definite promise" that the Court could enforce in equity.  As such, the motion to dismiss will be granted as to Count II.

**D. Claims against Individual Defendants**

The final section of Defendants' motion argues that the Court should dismiss the remaining claims pending against six of

the seven individual defendants.[18]  Though Defendants do not

outline which claims should be dismissed against which

individuals, upon a review of the SAC[19] the Court can ascertain

that Defendants seek dismissal of (1) Count I for Violation of

the Maryland Franchise Act against JoAnne Shaw, Julius Shaw,

Kurt Shaw, Owen Stern, Ken Coxen and Walter Pilon, and (2)

Counts III and IV, for Intentional Misrepresentation and

Negligent Representation, respectively, against Ken Coxen and

Owen Stern.

    With respect to the claim under the Maryland Franchise Act,

Defendants argue that the allegations against the six

individuals named above are not made with sufficient

particularity and that the false statements that are alleged are

not actionable as fraud because they are statements regarding

future projections.  Count I of the SAC alleges that Defendants

violated the Maryland Franchise Act by: not providing a UFOC to

Plaintiffs at the first personal meeting with Coffee Beanery; by

providing a UFOC that was incomplete, inaccurate, and contained

false statements of material fact; and by having Plaintiffs sign

a Franchise Agreement that contained false statements of fact.

_____

[18] Defendants do not seek to dismiss the claims alleged against
Coffee Beanery or Kevin Shaw.

[19] In the prayer for relief in each Count, Plaintiffs indicate
against which Defendants they seek to recover for that
particular Count.  The Court notes that Plaintiffs do not seek
to recover for every claim against all of the Defendants.

SAC at ¶¶ 111-13.  Count I further alleges that the individual defendants can be held liable because they were officers of Coffee Beanery, had knowledge that false representations were made, and aided in the acts that violated the Maryland Franchise Act.

Plaintiffs very precisely identify the statements in the UFOC that were inaccurate and also detail what they perceive to be fraudulent omissions.  See SAC at ¶ 22-23, 112.  Plaintiffs, allege, for example, that the UFOC misstated construction, furniture, fixture and equipment costs, and did not properly or accurately identify current and former franchises.  None of these statements relate to projections about future earnings or profitability, which the Court agrees would not be actionable as fraud.  See Layton v. AAMCO Transmission, Inc., 717 F. Supp. 368, 371 (D. Md. 1989) (representations regarding a franchise owner's probability of success not actionable fraud).  The alleged misrepresentations were contained within the UFOC that was provided to Plaintiffs, and thus Defendants can easily identify the statements made, when they were made, and that they were made by Coffee Beanery.  These allegations therefore satisfy Rule 9(b).  Moreover, the stringent requirements of Rule 9(b) do not apply to the pleading of omissions, which by their very nature cannot be described in terms of time, place, and identity of the person making the misrepresentation.  See Flynn

v. Everything Yogurt, Civ. A. No. HAR92-3421, 1993 WL 454355 at

*9 (D. Md. Sept. 14, 1993) (citing Bonfield v. Aamco

Transmissions, Inc., 702 F. Supp. 867, 875 (N.D. Ill. 1989)

(considering similar Illinois franchise act).  As such, the

allegations regarding omissions are also sufficient to withstand

the motion to dismiss.

Though Plaintiffs do not allege any particular statements

made by each of the Individual Defendants that violate the

Maryland Franchise Act, this does not mean the Individual

Defendants cannot still be liable.  Section 14-227 of the

Maryland Franchise Act provides that joint and several liability

extends to:

> (i)    each person who directly or indirectly controls a
>        person liable under this section;
>
> (ii)   each partner in a partnership liable under this
>        section;
>
> (iii)  each principal officer or director of a corporation
>        liable under this section;
>
> (iv)   each other person that has a similar status or
>        performs similar functions as a person liable under
>        this section; and
>
> (v)    each employee of a person liable under this section,
>        if the employee materially aids in the act or
>        transaction that is a violation under this subtitle.

Md. Code Ann., Bus. Reg, § 14-227(d)(iii).  Plaintiffs have

alleged that the Individual Defendants are officers and

employees of Coffee Beanery, that they had knowledge of the

false representations, and that they materially aided in the
acts that violated the Maryland Franchise Act.  SAC at ¶ 117.
These allegations sufficiently state a claim for joint and
several liability against the Individual Defendants, thus the
Court will deny the Motion to Dismiss Count I against the
Individual Defendants.

Finally, with respect to the claims for Intentional and
Negligent Misrepresentation alleged against Ken Coxen and Owen
Stern, Defendants argue that (1) Plaintiffs have not alleged
with sufficient particularity the misrepresentations made by
these two individuals and (2) that any specific statements
attributed to these individuals were made to non-parties, and
thus not actionable.

The Court agrees that Plaintiffs have not adequately pled
claims for Intentional or Negligent Misrepresentation against
Ken Coxen and Owen Stern.  The allegations in the counts
themselves only generally allege the types of misrepresentations
made to Plaintiffs, and do not adequately allege the
circumstances of those misrepresentations, i.e. the time, place,
and specific content of the false representations, or the
identity of the person making them.  See Harrison, 176 F.3d at
784.  Moreover, though the body of the complaint contains more
specific allegations regarding statements made by Coxen and
Stern, these statements were all alleged to have been made to

46

nonparty franchisees, and thus are not statements on which Plaintiffs may base their claims for misrepresentation.  <u>See Avery v. Chariots for Hire</u>, 748 F. Supp. 2d 492, 504 (D. Md. 2010).  As such, the Count III and IV will be dismissed as pled against Ken Coxen and Owen Stern.

## V.    **CONCLUSION**

For the foregoing reasons, the Court concludes that the Supplemental Motion to Dismiss will be denied, the Motion to Take Judicial Notice and Request to Strike will be granted in part and denied in part, the Motion for Partial Dismissal will be granted in part and denied in part, and the Motions for Sanctions will be denied.  The Court will issue a separate Order.

_____/s/_____
William M. Nickerson
Senior United States District Judge

August 27, 2012