IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WW, LLC <u>et al.</u>                      *
                                          *
          v.                              *      Case No. WMN-05-3360
                                          *
THE COFFEE BEANERY, LTD. <u>et al.</u>     *
                                          *
                                          *
    *    *    *    *    *    *    *    *    *    *    *    *

<u>MEMORANDUM</u>

This is a case of buyers' remorse.  The question presented
by the parties' pending cross-motions for summary judgment is
whether Plaintiffs have produced sufficient evidence that their
remorse is the result of misrepresentations by Defendants, to
take their claim to trial.  Based on the substantial record
developed through extensive discovery,[1] the Court now determines

---

[1] Also pending before the Court are two motions to compel
discovery, one from each side.  ECF No. 147 (Defendants' Motion)
& ECF No. 148 (Plaintiffs' Motion).  Both will be denied.  While
the motions to compel were pending, the parties' summary
judgment motions were fully and adequately briefed, and nowhere
in the briefing of those motions did the parties suggest that
their argument was hampered by an incomplete record stemming
from the outstanding discovery.  Moreover, the Court finds the
requested information to be minimally relevant or rendered
completely irrelevant by its rulings on the summary judgment
motions.  Finally, after nearly eight years of litigation in no
fewer than four different courts, and including 11 days of
arbitration, generating thousands of pages of testimony, it is
time that this case moved past discovery.  The Court will thus
exercise its discretion to see that it does.  <u>See</u> <u>Erdmann v.
Preferred Reaserch, Inc.</u>, 852 F.2d 788, 792 (4th Cir. 1988)
("The scope and conduct of discovery . . . are within the sound
discretion of the district court.").

that they have.[2]  For the reasons stated herein, the Court will

deny Plaintiffs' Motion for Partial Summary Judgment, ECF No.

149, and grant Defendants' Motion for Summary Judgment, ECF No.

153, in part, and deny it in part.  The Court will also grant

Defendants' Motion to Strike Jury Demand, ECF No. 146.

## I.    FACTUAL AND PROCEDURAL HISTORY

The Court has previously commented on the "long and

tortured history" of this case.  ECF No. 120 at 2.  As a result

of that history, the general facts and issues involved are well

known to the parties and to the Court, and they will not be

repeated here in any great detail.  See id. at 2-4; ECF No. 62 at

1-11; see also Coffee Beanery, Ltd. v. WW, LLC, 501 F. Supp. 2d

955 (E.D. Mich. 2007) ("Coffee Beanery I"); Coffee Beanery, Ltd.

v. WW, LLC, 300 F. App'x. 415 (6th Cir. 2008) ("Coffee Beanery

II"); WW, LLC v. Coffee Beanery, Ltd, 419 F. App'x 372 (4th Cir.

2011) ("Coffee Beanery III").  For purposes of introduction it

suffices to say that Plaintiffs Deborah Williams and Richard

Welshans created Plaintiff WW, LLC in 2003 after Welshans

entered into a Franchise Agreement with The Coffee Beanery, Ltd.

(Coffee Beanery) that same year.  They opened a Coffee Beanery

café in Annapolis, Maryland which they operated until November

2007, incurring substantial losses along the way.  On December

---

[2] The Court finds that no hearing is necessary.  Local Rule
105.6.

2

15, 2005, they filed this suit against Coffee Beanery and numerous of its officers (the "Individual Defendants"). Additional relevant facts will be discussed as needed throughout the Court's analysis of the issues raised by the parties' motions.

The present iteration of Plaintiffs' allegations is found in their Second Amended Complaint, ECF No. 84. On August 27, 2012, the Court dismissed Plaintiffs' claims for detrimental reliance and conspiracy against all Defendants, as well as their claims for intentional misrepresentation (Count III) and negligent misrepresentation (Count IV) as they were alleged against Defendants Ken Coxen and Owen Stern. ECF No. 120. Therefore, for the purposes of the parties' cross-motions, Plaintiffs' remaining claims are for violation of the Maryland Franchise Registration and Disclosure Law, (the "Maryland Franchise Act" or "MFA") Md. Code Ann., Bus. Reg. §§ 14-201 et seq. (Count I), intentional misrepresentation, negligent misrepresentation, and violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., (Counts V & VI).

Defendants' motion asks the Court to grant them summary judgment on all of Plaintiffs' remaining claims. Plaintiffs' cross-motion asks that the Court grant summary judgment in their favor in the following respects:

- On Count I, by finding (1) that Defendants violated various provisions of the Maryland Franchise Act by providing an unregistered Uniform Franchise Offering Circular ("UFOC") to Plaintiffs, selling a franchise to Plaintiffs without providing a registered UFOC at least ten days before the sale, and for selling a franchise to Plaintiffs based on untrue statements of material fact or omissions of material fact, and (2) that Plaintiffs reasonably relied on Defendants' untrue statements or omissions when deciding whether to purchase the franchise;

- On Count III by finding that Coffee Beanery (1) made false statements or misleading omissions, (2) knowing that they were false, (3) intending that Plaintiffs rely on those statements, and (4) that Plaintiffs did rely on them; and

- On Count IV by finding in their favor on all of the elements of negligent misrepresentation except for damages.

## II. LEGAL STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56 if the moving party shows "that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  A dispute of fact is genuine when "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258 (1986). When making this determination, all justifiable inferences from the evidence must be drawn in favor of the non-moving party. Id. In addition, the dispute must be over a material fact, or one that might affect the outcome of the suit under the controlling substantive law; "factual disputes that are irrelevant or unnecessary" need not be considered when ruling on a motion for summary judgment. Id. at 247-48. The Court's task is not to weigh the evidence, but to determine whether the plaintiff has "sufficient proof, in the form of admissible evidence that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993); see also Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 248).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment - even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted). The role of the court is to "rule on each

party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985).

## III. DISCUSSION

### A. Effect of the Sixth Circuit's Decision on Appeal from Arbitration and Defendants' Agreement to the Consent Order With the Securities Division of the Maryland Attorney General's Office

Plaintiffs argue that prior decisions in proceedings between the parties should control substantial portions, if not all, of the present dispute. Specifically, Plaintiffs suggest that the Sixth Circuit's decision or the Consent Order which Defendants Kevin Shaw and Coffee Beanery entered into with the Maryland Attorney General should be binding on Defendants here under the doctrines of law of the case or collateral estoppel. The Court does not agree with Plaintiffs in either case.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009) (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (internal quotation omitted)). It is discretionary, not mandatory, CNF Constructors, Inc. v. Donohoe Constr. Co., 57 F.3d 395, 398 n.1 (4th Cir. 1995), and there are a number of

instances when it is not properly invoked. Specifically, the
doctrine should not apply when "(1) a subsequent trial produces
substantially different evidence, (2) controlling authority has
since made a contrary decision of law applicable to the issue,
or (3) the prior decision was clearly erroneous and would work
manifest injustice." Sejman v. Warner-Lambert Co., Inc., 845
F.2d 66, 69 (4th Cir. 1988) (quoting EEOC v. Int'l
Longshoremen's Assoc., 623 F.2d 1054 (5th Cir. 1980)).
Moreover, while the law of the case doctrine does extend to
questions actually decided as well as those decided by necessary
implication, "it does not reach 'questions which might have been
decided but were not.'" Id. (quoting Copra, Inc. v. Ward Foods,
Inc., 567 F.2d 1316 (5th Cir. 1978)).

"Collateral estoppel bars the relitigation of specific
issues that were actually determined in a prior action . . . so
long as the party against whom [collateral estoppel] is asserted
had a full and fair opportunity to litigate the issue." Haskins
v. Hawk, Case No. ELH-11-2000, 2013 WL 1314194, at *9 (D. Md.
Mar. 29, 2013) (internal citations and quotations omitted). A
party asserting collateral estoppel "must demonstrate that (1)
the issue or fact is identical to the one previously litigated;
(2) the issue or fact was actually resolved in the prior
proceeding; (3) the issue or fact was critical and necessary to
the judgment in the prior proceeding; (4) the judgment in the

prior proceeding is final and valid; and (5) the party to be

foreclosed by the prior resolution of the issue or fact had a

full and fair opportunity to litigate the issue or fact in the

prior proceeding." In re Microsoft Corp. Antitrust Litig., 355

F.3d 322, 326 (4th Cir. 2004).

### 1. The 2008 Opinion By the Sixth Circuit Court of Appeals

Plaintiffs assert that the Sixth Circuit found (1) that

Coffee Beanery violated the MFA by failing to disclose that

Kevin Shaw had been convicted of a felony, ECF No. 149-1 at 20-

22, and (2) that the entire franchise agreement, ECF No. 161 at

8-9, is invalid.  Plaintiffs claim that either of these

determinations warrants entering judgment in their favor on the

question of liability based on either law of the case or

collateral estoppel.  The Court acknowledges that it has

credited Plaintiffs' reading of the Sixth Circuit's opinion in

its own prior decisions.  ECF Nos. 62 & 120.  In none of those

prior decisions, however, has a reading of the Sixth Circuit's

opinion been outcome determinative, as Plaintiffs argue it is

here.  That difference alone is sufficient to permit the Court

to reevaluate its prior statements and give the Sixth Circuit's

opinion the critical analysis it deserves.

### a. Law of the Case

According to Plaintiffs, the law of the case doctrine compels the Court to find that the Franchise Agreement was invalidated because Coffee Beanery misrepresented the status of Kevin Shaw's criminal background. ECF No. 161 at 16. There are several problems with this argument, however, most obviously is the fact that the Sixth Circuit made no such determination. Rather, the court undertook the narrow task of reviewing the arbitrator's decision. Coffee Beanery II, 300 F. App'x at 418. The court made clear that reviewing an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence." Id. (quoting Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir. 2005)). It noted that § 10 of the Federal Arbitration Act (FAA) provides a limited number of grounds for vacating an arbitrator's award in addition to the ability of a court to vacate an award based on a "manifest disregard of the law." Id. Relying on this latter ground, the court determined that the arbitrator manifestly disregarded the law when reaching the conclusion that Coffee Beanery was not required to disclose that Kevin Shaw had been convicted of grand larceny. Id. at 420. The court noted that "Coffee Beanery and Shaw may be civilly liable to [Plaintiffs]," id. (emphasis added), and held that

> [b]ecause [Plaintiffs were] deprived of a mandatory,
> statutorily required notice, prior to entering into
> the franchise agreement, and did not have an
> opportunity to avoid being subjected to the
> consequence of having entered into the contract
> (including the requirement to arbitrate such claims)
> [Plantiffs] should not be bound by the arbitration
> provisions of the agreement which it was fraudulently
> induced into signing in violation of the Franchise
> Act.

Id. at 421 (emphasis added). The court therefore vacated the arbitrator's award and further held that "[Plaintiffs] need not resort to arbitration to vindicate its statutory rights but may instead seek appropriate relief in a court of law."[3] Id. at 421. No reasonable reading of the court's opinion could suggest that the Sixth Circuit invalidated the Franchise Agreement between the parties.

Plaintiffs' position now is also inconsistent with the position they took in their direct appeal from the arbitrator's award. While the FAA does provide a means for invalidating an underlying contract, see 9 U.S.C. § 2; Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 909 (6th Cir. 2000),

---

[3] Among the relief that the Sixth Circuit suggested Plaintiffs could seek was rescission of the contract. Coffee Beanery II, 300 F. App'x at 421 ("we believe the issue of whether [Plaintiffs are] entitled to a rescission is more appropriately addressed when [Plaintiffs] pursue[] [their] civil remedies available under the Franchise Act in a court of law."). This statement is a further indication that the court did not vacate the Franchise Agreement because had it done so, there would have been no agreement for Plaintiffs to seek to rescind at a later date.

Plaintiffs only sought review under 9 U.S.C. § 10, which permits a district court to vacate an arbitrator's award in the limited circumstances outlined above. See Coffee Beanery I, 501 F. Supp. 2d at 959 n.2 ("In their motion to vacate the arbitration award, [Plaintiffs] rely on Section 10 of the Act, only."). Under Plaintiffs' interpretation of the Sixth Circuit's opinion then, the court would have considered the validity of the Franchise Agreement sua sponte, and imposed a remedy that Plaintiffs did not even ask for. This Court finds neither proposition plausible.[4]

Finally, the law of the case doctrine does not apply here in light of the exceptions for new evidence and clear error, see Sejman, 845 F.2d at 69, even though the latter is not easily invoked. In TFWS, Inc. v. Franchot, the Fourth Circuit stated that "[a] prior decision does not qualify for this [exception] by being just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." 572 F.3d 186, 194 (4th Cir. 2009) (internal quotations and citations omitted). That

---

[4] Plaintiffs' position now is also inconsistent with the position they took at the pleading stages of this case. In their Second Amended Complaint they plead that "[p]ursuant to the terms of the Franchise Agreement, the attorneys' fees and costs in any litigation concerning the Agreement are to be awarded to the prevailing party," and then shortly thereafter make clear that they are seeking "compensatory damages . . . along with attorneys' fees [and] costs." ECF No. 84 (Second Amend. Compl.) ¶ 118 (emphasis added) & Count I ad damnum.

demanding burden is satisfied here.  Assuming, arguendo, that
the Sixth Circuit did vacate the Franchise Agreement, that
holding was premised on its decision to credit the arbitrator's
finding that Kevin Shaw had a felony conviction for grand
larceny which Coffee Beanery failed to disclose.  See Coffee
Beanery II, 300 F. App'x at 419.  In fact, however, not only is
there no evidence in the record to support such a finding, there
is evidence indicating that no such conviction exists.  See ECF
Nos. 154-17 (certificate of conviction for misdemeanor charge of
larceny) & 154-18 (report of investigator with attachments).

Plaintiffs' response is twofold, but neither is sufficient
to relieve them of its effect on their argument.  First,
Plaintiffs suggest that the evidence is not new and cite to this
Court's August 27, 2012, opinion.  ECF No. 161 at 17.  There,
the Court in ruling on Defendants' motion to take judicial
notice, refused to take judicial notice that Kevin Shaw had
never been convicted of a felony in spite of Defendants'
presentation of the certificate of conviction issued by the 67th
District Court for the State of Michigan, which they have
referenced again here.  The Court explained that Kevin Shaw
would "have the opportunity at trial to test these allegations
and offer evidence that will presumably attempt to explain the
perceived misunderstanding that has led to Plaintiffs'
allegation that he was convicted of a felony."  ECF No. 120 at

16. Thus, while the Court refused to accept Defendants'
position at that time, it also clearly left open the possibility
that the Sixth Circuit's finding could be challenged.
Consistent with that opinion, the Court finds that the record as
a whole, taking into account the report from the investigator
submitted by Defendants, ECF No. 154-18, as well as the absence
of any additional evidence offered by Plaintiffs indicating that
Kevin Shaw was convicted of a felony, can only support a finding
that the Sixth Circuit's conclusion was incorrect.

Second, Plaintiffs argue that Defendants have done nothing
to undermine the Fourth Circuit opinion, which according to
Plaintiffs "squarely held that the Sixth Circuit had 'vacated
the Franchise Agreement.'" ECF No. 161 at 17 (quoting Coffee
Beanery III, 419 F. App'x at 373). As a result, they argue
that, at minimum, the Fourth Circuit decision is law of the case
holding that the Franchise Agreement has been vacated. ECF No.
161 at 17-18. Plaintiffs, however, appear to forget the
definition of a "holding." Black's Law Dictionary (9th ed.
2009) defines the term as "a court's determination of a matter
of law pivotal to its decision." The validity of the Franchise
Agreement – or perhaps, more properly, the Sixth Circuit's
determination relating to the Franchise Agreement - has never
been an issue before the Fourth Circuit any more than it was an
issue before this Court or before the Sixth Circuit, let alone

one that was "pivotal to its decision." Therefore, Plaintiffs'
argument fails because the Fourth Circuit did not decide on a
"rule of law" relating to the Franchise Agreement that should
guide this Court in its decision.

## b. Collateral Estoppel

Alternatively, Plaintiffs argue that Defendants are
collaterally estopped from rearguing the issues of their alleged
fraud and violation of the MFA because, according to Plaintiffs,
those issues were necessarily decided by the Sixth Circuit. ECF
No. 149-1 at 21-22. As noted above, however, the Sixth
Circuit's role was limited to determining whether to set aside
the arbitrator's award or, whether the district court's decision
to confirm the arbitrator's award was correct; the merits of
Plaintiffs' claims were not before the court, nor were they
necessarily decided by the court. See Wachovia Sec., Inc. v.
Gangale, 125 F. App'x 671, 677 (6th Cir. 2005) ("The standard
for judicial review of arbitration procedures is merely whether
a party to arbitration has been denied a fundamentally fair
hearing."); Appalachian Reg'l Healthcare Inc. v. Beyt, Rish,
Robbins Grp., 963 F.2d 373 (6th Cir. 1992) (unpublished per
curiam opinion) ("under the Federal Arbitration Act, the
arbitration award was subject to a limited scope of review and
the only question before the district court was whether the
arbitrators overstepped their authority in rendering the

award.").  Thus, Defendants are not collaterally estopped from challenging their liability as a result of the Sixth Circuit's opinion.

### 2. The Maryland Consent Order

Plaintiffs also argue that the Consent Order into which Kevin Shaw and Coffee Beanery entered with the Securities Division of the Office of the Maryland Attorney General entitles them to judgment.  ECF No. 149-1 at 17.  Plaintiffs do acknowledge, however, that the Consent Order by its terms is not binding in subsequent proceedings such as this one.  Id.; see also ECF No. 149-13 (Consent Order) at 2 ("[Defendants] may deny any statement of fact or conclusion of law of the Consent Order in any proceeding, litigation, or arbitration against them in which the Commissioner is not a party.").  That, itself, is sufficient to dispose of any suggestion that Defendants are conclusively bound by the Consent Order in this litigation or are collaterally estopped from challenging their alleged liability.[5]

---

[5] The cases Plaintiffs cite in their reply for the proposition that the factual and legal findings in the Consent Order are entitled to great, even conclusive, deference are inapposite because they deal with direct appeals from agency adjudications under the Administrative Procedure Act.  See, e.g., Frey v. Comptroller of Treasury, 29 A.3d 475, 489 (Md. 2011) (citing Md. Code Ann., Cts & Jud. Proc. §§ 10-222 & 10-223 and noting that final order of Tax Court is subject to the same standard of review provided for in contested cases); Pautsch v. Md. Real Estate Comm'n, 31 A.3d 489, 503 (Md. 2011) (reviewing decision

**B. Plaintiffs' Remaining Claims**

Having addressed Plaintiffs' primary arguments for summary judgment which are unique to their position, the Court turns to Defendants' motion. Plaintiffs' remaining arguments for partial summary judgment are essentially an opposition to Defendants' positions and they will be addressed as such below.

**1. The Maryland Franchise Act**

In Count I, Plaintiffs allege that Defendants violated the Maryland Franchise Act. Section 14-227 provides

> (1) A person who sells or grants a franchise is
> civilly liable to the person who buys or is granted a
> franchise if the person who sells or grants a
> franchise offers to sell or sells a franchise:
> (i) without the offer of the franchise being
> registered under this subtitle; or
> (ii) by means of an untrue statement of a material
> fact or any omission to state a material fact
> necessary in order to make the statements made,
> in light of the circumstances under which they

---

pursuant to Md. Code Ann., Cts & Jud. Proc. § 10-222). In those circumstances, the standard of review is more akin to that governing a court's review of an arbitrator's decision under the FAA. Compare Pautsch, 31 A.3d at 503 ("A court's role in reviewing an administrative adjudicatory decision is narrow." (quoting Md. Aviation Admin. v. Noland, 873 A.2d 1145 (Md. 2005)), with Coffee Beanery II, 300 F. App'x at 418 (noting that scope of review of a an arbitrator's decision is one of the narrowest in American jurisprudence.). Here, the Court is not held to such a rigid standard even though some consideration of the Consent Order may be appropriate. See Ritter v. Cecil Cnty. Office of Hous. & Cmty. Dev., 33 F.3d 323, 328 (4th Cir. 1994)("some deference" to state determinations is required even if "agency may not benefit from the standard of review established by the Administrative Procedure Act"); In re Montgomery Cnty. Real Estate Antitrust Litig., 83 F.R.D. 305, 320 n.22 (D. Md. 1979).

are made, not misleading, if the person who buys
or is granted a franchise does not know of the
untruth or omission.
(2) In determining liability under this subsection,
the person who sells or grants a franchise has the
burden of proving that the person who sells or grants
a franchise did not know and, in the exercise of
reasonable care, could not have known of the untruth
or omission.

Section 14-227(b) allows the person purchasing the

franchise to sue to recover those damages sustained as a result

of the grant of the franchise. In their briefing, Plaintiffs

also argue that Defendants violated other provisions of the MFA,

such as §§ 14-223, 14-229 & 14-230. See, e.g., ECF No. 149-1 at

25 & 32 (alleging violation of § 14-223 regarding delivery of

offering prospectus). Neither of these sections, however, is

enforceable in a civil suit by a private party. Flynn v.

Everything Yogurt, Civ. No. HAR-94-3421, 1993 WL 454355, *7 (D.

Md. Sept. 14, 1993)(Hargrove, J.). Therefore, the Court will

analyze the parties' arguments related to Count I of Plaintiffs'

Amended Complaint only to the extent of that count's allegation

that Defendants violated § 14-227.

### a. Standing

Defendants argue that only Welshans has standing to pursue

a claim under the MFA because he was the only person "who

[bought] or [was] granted a franchise." Bus. Reg. § 14-

227(a)(1); ECF No. 153-1 at 41-42. In response, Plaintiffs

argue that § 14-227 should be interpreted to include (1) a

corporate entity such as WW, LLC that was formed after the franchise was purchased and to which the purchaser assigned "the agreement . . . as part of a simple transaction to create entity ownership,"[6] and (2) individuals such as Williams "who participated in the purchase and who was ready to write a check" for the purchase of the franchise. ECF No. 159 at 43. Failing to do so, they argue, would undermine the purpose of the MFA. Id. at 42-43.

Plaintiffs' argument is unavailing and unsupported by the case law. In Flynn, the Court held that neither an individual who did not purchase a franchise directly nor a corporate entity that was formed post-purchase could pursue claims under § 14-227. 1993 WL 454355, at *6. In addition, in G&R Moojestic Treats, Inc. v. Maggiemoo's International, Inc., Civ. No. WMN-04-1694, slip op. at 11-12 (D. Md. Mar. 10, 2005), this Court held that an individual who entered into a franchise agreement on behalf of an entity to be named lacked standing to pursue a claim under § 14-227(a). The Court sees no basis to depart from these holdings in favor of Plaintiffs' speculation regarding the legislature's intent when § 14-227 unambiguously provides that

---

[6] Plaintiffs assert that Welshans assigned the franchise agreement to WW, LLC. Id. at 42. The Court notes, however, that the Franchise Agreement itself contains specific requirements for affecting such a transfer. ECF No. 146-3 at 20-22. Plaintiffs have made no showing that those requirements were satisfied.

the seller of a franchise is only liable to those persons "who buy[] or [are] granted a franchise." Therefore, the Court will grant Defendants' motion in this regard and holds that only Welshans may pursue a claim under the MFA.

### b. Registration of the Franchise Offer

Plaintiffs make some suggestion that Defendants violated § 14-227(a)(i). They argue that Welshans was provided with two UFOCs, the first of which was received on June 2, 2003, and, according to Plaintiffs, was unregistered, while the second received on June 11, 2003, and was registered, but because Welshans signed the Franchise Agreement on June 17, 2003, was not provided 10 days before that agreement was reached as required by § 14-223. ECF No. 149-1 at 11 & 32; P. Opp. at 37-38. As Defendants note, Plaintiffs' testimony appears to have changed for the purposes of the pending motions because they previously testified repeatedly that they received only one UFOC. Compare Welshans Dep. (ECF No. 16-3) at 195:3-5 (Q. Did you get two UFOCs prior to signing the franchise agreement? A. No.); Welshans Arb. Tr. (ECF No. 162-4) at 247-53, and Williams Arb. Tr. (ECF No. 162-5) at 1959-60, with Welshans Dec. (ECF No. 149-2) at ¶ 2. Even crediting the version of events that they present here, Plaintiffs' claim on this front fails for either of two reasons.

First, under the present iteration of Plaintiffs' claim, they do not dispute that they received a registered copy of the UFOC, only that it was not provided at the time required by the MFA.  Thus, they argue that § 14-227 must be read in conjunction with § 14-223 which requires that a franchisor provide prospective franchisees with a UFOC at the earlier of (1) their first personal meeting, or (2) 10 days before the execution of a contract or payment of consideration related to the franchise relationship.  ECF No. 159 at 38.  Failing to do so, they argue, would undermine the legislature's obvious intent and render meaningless the requirement in § 14-227 that the franchise be registered.  Plaintiffs are wrong.  As the Court held in Flynn, enforcement of § 14-223 is left to the Commissioner and the Attorney General "except to the extent that the alleged violations also fall[] within § 14-227."  1993 WL 454355, at *7.  All that § 14-227 requires is that the franchise offer be registered.  Because the language of § 14-227 is clear, no further inquiry in the Legislature's intent is required.  Ishola v. State, 945 A.2d 1273, 1276 (Md. 2008) ("In order to ascertain the intent of the Legislature, we begin with the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute.").

Second, even if § 14-227 should be read in conjunction with § 14-223, Plaintiffs' claim still fails because the record is

undisputed that Plaintiffs did not suffer any harm from receiving the registered version of the UFOC when they did. Welshans testified that the Plaintiffs "had [the UFOC] the number of days we needed to have it" and "had enough time to look through it and make an informed decision." Welshans Dep. (ECF No. 162-3) at 250:9-10 & 250:17-18. As Defendants note, any delay in providing a registered copy of the UFOC is at most "a purely technical violation of the MFA, one that did not influence [Welshans'] decision to become a franchisee." ECF No. 162 at 12. The Court will therefore grant summary judgment in Defendants' favor on Count I to the extent that it alleges a violation of § 14-227(a)(1)(i).

### c. The Alleged Misrepresentations in the UFOC

Plaintiffs claim that Defendants made several misrepresentations or omissions of material fact in the UFOC which violate § 14-227(a)(1)(ii). Specifically, they claim that Defendants, (1) misrepresented its business experience and franchising experience, (2) failed to separately identify the names and addresses of franchisees of café outlets, (3) misrepresented Julius Shaw's position, (4) failed to disclose that Kevin Shaw had been convicted of a felony, (5) misrepresented that monies paid into Coffee Beanery's national advertising fund were not commingled with other funds, (6) failed to disclose certain required contracts and programs, and

(7) did not include unaudited financial statements from November 2002 with the UFOC.[7] ECF No. 149-1 at 23-32; ECF No. 84 (Second Amend. Compl.) ¶¶ 112-13. Defendants argue that they did not make any misrepresentations or alternatively that none of the alleged misrepresentations or omissions was material. ECF No. 153-1 at 36 & 37. The Court will grant Defendants' motion with regard to this portion of Plaintiffs' Count I, only in part.

On the issue of whether Defendants made any misrepresentations, the parties agree that the UFOC Guidelines propounded by the North American Securities Administrators Association (NASAA) on April 25, 1993, establish Defendants' obligations with regard to their required disclosures. <u>See</u> Md. Code Regs. 02.02.08.04. Reviewing the UFOC by those standards, the Court concludes that it cannot grant summary judgment in

---

[7] The Court agrees with Defendants' assertion that Count I does not include the "earnings claim" that Plaintiffs make in Count III (intentional misrepresentation) and Count IV (negligent misrepresentation). There, Plaintiffs allege that Defendants misrepresented "the earnings Plaintiffs could expect from operating" their store, ECF No. 84 (Second Amend. Compl.) ¶ 125, in addition to other representations about such things as costs associated with opening the store, the identity of other franchisees, and payments to the Coffee Beanery marketing fund. Count I, however, is narrowly tailored to address only the alleged misrepresentations in the UFOC and the Franchise Agreement, <u>see</u> ECF No. 84 (Second Amend. Compl.) ¶¶ 110-119, and does not include any allegation that those documents included any misrepresentation regarding earnings. Plaintiffs do not respond to Defendants' argument about content of Count I and given the very specific nature of Plaintiffs' claim, the Court cannot infer that Count I includes the earnings claim that is the basis of their claims for misrepresentation.

Defendants' favor.  At points, Defendants even appear to acknowledge as much.  See, e.g., ECF No. 154 at 36 ("[r]easonable minds could certainly disagree on whether CBL should have differentiated between its café concept and its traditional store in Item 1.").  The only alleged misrepresentation that is not actionable, based on the record before the Court, is Kevin Shaw's supposed felony conviction.  Plaintiffs have produced no evidence that Shaw was, in fact, convicted of a felony.  Instead, they rest on their reading of the Sixth Circuit's opinion and seek to invoke the doctrines of estoppel and law of the case.  As discussed above, however, neither doctrine applies here.

Defendants assert that to the extent that they made misrepresentations or omitted information from the UFOC, Plaintiffs' claim still fails because none of those misrepresentations or omissions was material.  Defendants, however, fail to offer any argument regarding the materiality of the alleged misrepresentations that could support granting summary judgment in their favor.  Rather, they attack the believability or credibility of Welshans' testimony.  See, e.g., ECF Nos. 153-1 at 47 ("Plaintiffs' entire claim with respect to the PepsiCo contract is . . . had they known that [Coffee Beanery] had entered a contract in which it overestimated the amount of Pepsi products that it's dozens of franchisees would

sell Welshans might never have signed a Franchise Agreement.

Plaintiffs cannot bring a claim based on that type of rank

speculation."); 162 at 19 ("[I]t is not credible for Welshans to

maintain that he would have walked away from the franchise

opportunity had he only known that he would be required to

install a music system, participate in a gift card program, and

purchase products from Pepsi.").  It is beyond dispute that

credibility determinations are not appropriate at the summary

judgment stage.  See, e.g., Nilson v. Historic Inns Group, Ltd.,

903 F. Supp. 905, 909 (D. Md. 1995).  If, at trial, the Court

credits Welshans' testimony, it will be able to find for him on

Count I.[8]  Therefore, the Court will grant Defendants' motion

only with respect to the claim that that Defendants violated the

MFA by misrepresenting Kevin Shaw's criminal history.[9]

---

[8] There are additional problems with Defendants' arguments that
support denying summary judgment.  For example, at one point
they cite to Williams' deposition testimony to establish that
certain representations in the UFOC were immaterial because
Plaintiffs did not intend to purchase a café until the day they
signed the Franchise Agreement, ECF No. 153-1 at 46, despite
their strenuous argument that Williams lacks standing to pursue
any of the asserted claims.  Id. at 41-42.  Defendants cannot
have it both ways; either Williams is a Plaintiff with standing
under the Franchise Act and her statements about her and
Welshans' intentions may be considered an admission that certain
representations by Defendants were immaterial, or she is not and
her statements cannot bind Welshans.

[9] Defendants also argue that the Individual Defendants should be
dismissed from this action because Plaintiffs have not produced
any "evidence that any of those individuals played any role in
preparing the UFOC provided to Welshans.  Nor do Plaintiffs

## 2. Misrepresentation and RICO

Defendants argue that Plaintiffs' misrepresentation (Counts III & IV) and RICO (Counts V & VI) claims are barred by the Franchise Agreement. Article 23.8 of the agreement provides:

> Any claim or controversy arising out of or related to this Agreement, or the making, performance, breach, interpretation, or termination thereof, brought by any party hereto against the other, with the exception of claims arising under the Maryland Franchise and Disclosure Law, shall be commenced within one (1) year from the occurrence of the facts giving rise to such claim or action or such claim or action shall be barred.

As Defendants note, Plaintiffs' misrepresentation and RICO claims arise out of statements and omissions made before the Franchise Agreement was signed on June 17, 2003. Thus, when they filed suit in December 2005, the one-year limitations period had long expired.

"[P]arties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1)

---

contend that they had any substantive discussions with any of [the Individual] Defendants prior to executing the Franchise Agreement." ECF No. 153-1 at 58. Defendants' argument, however, misconstrues the requirements of § 14-227(d) which provides that joint and several liability extends to the principals, officers and directors of a corporation that is liable unless those persons "did not have knowledge or reasonable grounds to believe in the existence of the facts by which the liability is alleged to exist." Because the Court finds that Plaintiffs have produced evidence from which it could find at trial that the Individual Defendants had at least a reasonable ground to believe in the existence of facts giving rise to the alleged liability, Defendants' motion will be denied insofar as it seeks dismissal of the Individual Defendants.

there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation." College of Notre Dame v. Morabito Consultants, Inc., 752 A.2d 265, 273 (Md. Ct. Spec. App. 2000). Save for their repeated assertion that the Sixth Circuit invalidated the Franchise Agreement including the limitations period, Plaintiffs offer no opposition to Defendants' argument on any of these substantive grounds. As detailed above, however, Plaintiffs' reading of the Sixth Circuit opinion is incorrect. Finding no reason not to enforce the limitations provision of the Franchise Agreement, the Court will grant Defendants' motion as it regards Plaintiffs' claims for misrepresentation and RICO.[10]

### C. Motion to Strike Jury Demand

Defendants also move to strike Plaintiffs' demand for a jury trial under Article 23.8 of the Franchise Agreement. ECF No. 146. In addition to the reduced limitations period, discussed above, that provision also states that "[Coffee Beanery] and

---

[10] To the extent that WW, LLC and Williams are not bound by the shortened limitations period in the Franchise Agreement as a result of the Court's ruling on standing, supra, their claims fail for additional reasons. Specifically, neither can show that the misrepresentations were made for the purpose of defrauding them nor can they show that they justifiably relied on any of the alleged misrepresentations. See 200 N. Gilmor, LLC v. Capital One, Nat. Ass'n, 863 F. Supp. 2d 480, 490 (D. Md. 2012) (identifying elements of intentional misrepresentation). Indeed, WW, LLC did not even exist as an entity at the time the alleged misrepresentations were made.

[Welshans] irrevocably waive trial by jury in any action,
proceeding, or counterclaim whether at law or in equity, brought
by either of them against the other, whether or not there are
other parties in such action or proceeding." As with the one-
year limitations period, Plaintiffs' only opposition is based on
their erroneous reading of the Sixth Circuit's decision. They
do not make any argument under the substantive standard
governing waivers of a jury trial by contract. See <u>Leasing</u>
<u>Service Corp. v. Crane</u>, 804 F.2d 828, 832-33 (4th Cir. 1986)
("The seventh amendment right is of course a fundamental one,
but it is one that can be <u>knowingly and intentionally</u> waived by
contract.") (emphasis added). Finding no basis for not
enforcing Article 23.8 in this regard, the Court will grant
Defendants' motion to strike Plaintiffs' jury demand and this
matter will proceed as a bench trial.[11]

---

[11] The appropriateness of Plaintiffs' jury demand is also raised
by the relief they seek in their Complaint. Plaintiffs have
pleaded, ECF No. 84 (Second Amend. Compl.) ¶ 119, and vigorously
argued, ECF No. 161 at 19-21, that they have a claim for
rescission of the franchise under § 14-227(c)(1), in addition to
their claim for damages. Rescission, however, is an equitable
remedy for which there is no right to a jury trial. <u>Merritt v.</u>
<u>Craig</u>, 746 A.2d 923, 931 (Md. Ct. Spec. App. 2000). Moreover, a
party may not be awarded both damages and rescission. <u>Flynn</u>,
1993 WL 454355, at *7 ("The civil liability statute of the
Maryland Franchise Registration and Disclosure Law allows either
the recovery of damages <u>or</u> rescission . . .) (emphasis added);
<u>see also</u> <u>Merritt</u>, 746 A.2d at 931 ("Under Maryland law, when a
party to a contract discovers that he or she has been defrauded,
the party defrauded has either a right to retain the contract
and collect damages for its breach, or a right to rescind the

## IV. CONCLUSION

For the foregoing reasons and in accord with the order appended hereto, Plaintiffs' Motion for Partial Summary Judgment will be denied, Defendants' Motion for Summary Judgment will be granted, in part, and denied, in part, and Defendants' Motion to Strike Jury Demand will be granted.

A separate order will issue.


_____/s/ _____
William M. Nickerson
Senior United States District Judge


July 17, 2013

---

contract and recover his or her own expenditures, not both.")
(internal quotations omitted). Thus, Plaintiffs' arguments that
they are entitled to a jury trial only make sense if they have
abandoned their claim for rescission.